[No. 35930.   Department Two.   July 5, 1962.]

CLIFFORD BENJAMIN *et al., Appellants,* v. HAVENS, INCORPO-RATED *et al., Respondents.*\*

\*Reported in 373 P. (2d) 109.

*Geo. W. Young* and *Leonard W. Smith*, for appellants.

*Leo N. Cashatt* and *Cashatt, Williams, Connelly & Rekofke*, for respondent Havens, Incorporated.

*John D. MacGillivray*, for respondents Levy.

HAMILTON, J.—This is an appeal by plaintiffs from the post trial action of the trial court in denying plaintiffs' motion for a new trial as to defendants Sol Levy and wife, and granting judgment notwithstanding the verdict on be-

half of defendant Havens, Incorporated, doing business as Jane O'Brien Hospital.

On December 23, 1957, plaintiff wife, Irene Benjamin, was referred, by her local physician, for examination and treatment to defendant Sol Levy, a practicing psychiatrist. Following examination, defendant Levy made a diagnosis of "agitated depression, probably involutional in character," and recommended immediate hospitalization in defendant hospital, together with electric shock treatments. Admission to the psychiatric ward or section of the defendant hospital, maintained, upon the "open door" policy, for moderately disturbed patients, was accomplished. The admission records contained defendant Levy's diagnosis, and an order to "watch patient—depressed." Five electric shock treatments were administered between December 24 and 31, 1957. On January 1, 1958, at approximately 9:30 p. m., plaintiff wife fled through an unlocked outer door, leaped or fell through a hedge, down a declivity, onto a cement patio, and sustained the injuries complained of.

Plaintiffs, alleging negligence, commenced this action against the respective defendants, resulting in a jury verdict exonerating defendants Levy, and holding defendant hospital liable. The trial court denied plaintiffs' motion for a new trial as to defendants Levy, and granted defendant hospital judgment notwithstanding the verdict.

Plaintiffs premised their motion for a new trial as to defendants Levy, and assign error to the trial court's denial thereof, upon essentially two grounds: (1) Error in submitting the issue of liability upon the theory of medical malpractice; and (2) error in the admission and rejection of certain evidence.

Plaintiffs' first claim of error rests upon a conflict in the testimony of plaintiff husband and defendant Levy.

Plaintiff husband testified, in substance, that prior to December 23, 1957, his wife had voiced suicidal threats, and, on the morning of the 23rd, attempted self-injury and destruction, of which defendant Levy had been advised. Defendant Levy denied he had been so informed, and ad-

mitted that, had he received such information, he would not have utilized the defendant hospital.

Upon the basis of this conflict, plaintiffs contend, as stated in their brief:

" . . . we had before the jury a simple question of veracity: Was appellant husband truthful or did the truth lie with respondent Levy? There was no question submitted to the jury concerning the knowledge or skill of respondent Levy. The issue presented by the evidence encompassed one proposition only, and that was whether or not appellant wife, in her then known mental condition as was claimed to have been told respondent Levy by appellant husband, should have been placed in respondent hospital by respondent Levy. . . ."

■ Plaintiffs' complaint, however, contained three allegations of negligence attributed to defendant Levy, all of which were submitted to the jury, without amendment, withdrawal, or exception by plaintiffs. Summarized, such allegations were: (1) Failure to select a suitable hospital; (2) failure to require adequate supervision; and (3) failure to prescribe necessary restraints.

Inherent in these allegations rest issues involving psychiatric diagnosis, evaluation and treatment. Upon the issues, so framed, defendant Levy's testimony, at best, would constitute only an admission, carrying plaintiffs past a motion for nonsuit or directed verdict, as to such specifications of negligence to which it could be related. It would not, and did not, preclude defendants Levy from presenting evidence relative to a different or varying standard of psychiatric care prevailing in the community.

We hold the trial court did not err in refusing to limit the issues as defined in plaintiffs' assignment of error.

Plaintiffs' second ground urged in support of a new trial as to defendants Levy is predicated essentially upon two assignments of error: The first relating to the admission into evidence of exhibit No. 17, and the second relating to the rejection of proffered exhibit No. 9.

Exhibit No. 17 consists of the office memoranda of the defendant psychiatrist made, according to his testimony, in

the regular course of his office and hospital interviews and treatment of plaintiff wife. Plaintiffs objected to the admission of such records upon the grounds that they were incompetent, irrelevant, immaterial, and self-serving.

RCW 5.45.010, the Uniform Business Records as Evidence Act, defines "business" as:

" . . . every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not."

RCW 5.45.020, renders admissible the records of a defined business, in the following language:

"A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

It would thus appear that a practicing physician or psychiatrist qualifies as a "business" within the contemplation of the Uniform Business Records as Evidence Act, and that his office charts and records, made in the regular course of business, properly identified, and otherwise relevant, would constitute competent evidence of an act, condition, or event therein recorded.

Plaintiffs, however, do not seriously challenge the competency or relevancy of exhibit No. 17. Rather, plaintiffs argue that, since defendant doctor orally testified to matters contained within the records, the records thereby become self-serving and corroborative. Plaintiffs, in this respect, point to no particular portion or statement contained in such records, but, rather, are content to rest upon their general objection to the exhibit as a whole.

Bearing in mind the distinction between memoranda used to refresh memory, and memoranda recording past recollection, as pointed out in *State v. Little*, 57 Wn. (2d) 516, 358 P. (2d) 120, it is our conclusion that exhibit No. 17 falls within the general rule, recognized in *Cooley v. Ben*

*Paris Sporting Goods & Recreation Co.*, 5 Wn. (2d) 415, 417, 105 P. (2d) 820:

"The rule is that, if a witness made the entries in the memorandum and knew at the time that they were correct, the memorandum may be received in evidence in connection with his testimony."

We hold the trial court did not err in admitting exhibit No. 17.

Exhibit No. 9 consists of hospital records of Eastern State Hospital relating to a commitment of plaintiff wife. Contained in such records are various statements by plaintiff husband dealing with his wife's prior conduct, consistent with his testimony at the trial. The trial court sustained defendant Levy's specific objections to such statements in the exhibit, upon the grounds that no foundation existed for the introduction of prior consistent out-of-court statements. This, it developed, was the purpose for which plaintiffs were offering such records.

While hospital records, such as exhibit No. 9, qualify under the Uniform Business Records as Evidence Act, we have heretofore held, in *Young v. Liddington*, 50 Wn. (2d) 78, 309 P. (2d) 761, that this statute does not render admissible material, contained in such records, which would otherwise be inadmissible.

The evidentiary situation upon which plaintiffs premised their offer of the consistent out-of-court statements, contained in such records, arose as follows: Plaintiff husband testified (a) that he discussed with Dr. Shanklin (a Portland psychiatrist who had formerly treated plaintiff wife) the suicidal threats of plaintiff wife; and (b) that he had informed Dr. Young, the referring doctor, and defendant Levy, on December 23, 1957, of his wife's threats and attempts at self-injury and destruction. Doctors Shanklin and Levy denied this, and Dr. Young testified he did not recall receiving such information.

Defendants' cross-examination of plaintiff husband did not directly, or indirectly, by the introduction of contradic-

tory acts or statements, impugn his testimony as being of recent origin.

Plaintiffs contend that sufficient foundation exists, however, by virtue of the contradiction in the evidence, either standing alone, or when coupled with defendant Levy's opening statement, wherein counsel for defendant Levy stated, *inter alia*:

"As I said, it [defendants Levys' proposed evidence] is going to be headed straight toward clearing up what to me are not mistaken statements, but absolutely untrue statements, made here as to Dr. Levy in an attempt to sustain the case against Dr. Levy. I think when you hear the testimony and hear the doctors, Dr. Young and Dr. Shanklin, in particular, you will have no difficulty in determining who has been telling the truth in this lawsuit."

We have heretofore, in *State v. Murley*, 35 Wn. (2d) 233, 236, 238, 212 P. (2d) 801, summarized our prior holdings as follows:

"When, on trial, *no attempt has been made to impeach* a witness' credibility, his prior out-of-court statements consistent with his oral testimony are inadmissible. [Citing cases.]

"Also, *when a witness' credibility has been assailed* by prior out-of-court statements *inconsistent* with his in-court testimony, prior out-of-court statements *consistent* with his in-court testimony are excluded. . . .

" . . .

" . . . A witness' prior out-of-court statements consistent with his in-court testimony are admissible for the sole purpose of re-establishing the witness' credibility when: (1) his testimony has been assailed (2) under circumstances inferring recent fabrication of his testimony (3) when the prior out-of-court statements were made under circumstances minimizing the risk that the witness foresaw the legal consequences of his statements. [Citing cases.]"

■ While a review of our decisions provides no clear cut path to a determination of precisely when a witness' credibility has been "assailed," under circumstances "inferring" recent fabrication, we are satisfied that mere contradiction of a witness', or party's, testimony by other wit-

nesses does not constitute such. In keeping with the majority view[1], we subscribe to the statement of Dean Wigmore, in 4 Wigmore on Evidence (3d ed.) § 1127, p. 202:

"A former consistent statement helps in no respect to remove such discredit as may arise from a contradiction by other witnesses. When B is produced to swear to the contrary of what A has asserted on the stand, it cannot help us, in deciding between them, to know that A has asserted the same thing many times previously. If that were an argument, then the witness who had repeated his story to the greatest number of people would be the most credible. . . ."

Likewise, we are satisfied that defendant Levy's opening statement, standing alone, or coupled with the contradiction, and unaccompanied by anything further, generating a reasonably recognizable inference of recent fabrication, does not constitute the requisite assailment.[2]

---

[1]140 A. L. R. 21, subd. IIIe, and 75 A. L. R. (2d) 909, subd. IIIE.

[2]When confronted with a somewhat analogous situation, in *State v. Braniff*, 105 Wash. 327, 331, 177 Pac. 801, we there said:

". . . in the application of such exception the great majority of the decisions show that the word 'assailed,' when so used, means assailed by at least some form of impeachment of the witness testifying upon the trial. Now the only manner in which Clark's testimony was assailed by counsel for appellant was, as claimed by counsel for the state, the statement of appellant's counsel in making his opening statement, . . . It was not claimed that, up to this time, or even thereafter during the trial, there was any attempt to prove in appellant's behalf that Clark had at any time previously made statements inconsistent with, or contradictory of, his testimony given upon the trial, or that there was any attempt on the part of counsel for appellant to introduce impeaching evidence of any nature, as such, against Clark as a witness. No decision has come to our notice, and we think there is none, holding that the mere assertion of counsel, such as was made by counsel for appellant in his opening statement to the jury, that 'we expect to show you that it is a frame-up' etc., constituted such an assailing of Clark's testimony as to render this testimony of the sheriff as to Clark's previous consistent statements admissible. We also think that the great weight of authority is to the effect that the mere assailing of a witness' testimony by cross-examination, though such cross-examination may suggest impeachment, does not render it permissible to prove previous consistent statements of the witness in order to sustain or corroborate his testimony given upon the trial. . . ."

We hold that the trial court correctly sustained defendants Levys' objection to the particular statements contained in exhibit No. 9.

We turn now to plaintiffs' assignments of error relating to the granting of judgment notwithstanding the verdict on behalf of defendant Havens, Incorporated.

A review of the record indicates the following generally undisputed background facts: Defendant Havens, Incorporated, maintained, as a part of the Jane O'Brien Hospital, a 20-patient ward for moderately disturbed mental patients, that is, patients not actively suicidal or homicidal; such ward was operated upon the "open door" policy, a therapeutic concept under which doors in and to the rooms and ward, including an outer door, were unlocked; the defendant hospital made no independent psychiatric evaluation of patients, upon their admission, as to the degree of their mental disturbance, relying upon the admitting psychiatrist in this regard; the defendant hospital provided only general psychiatric nursing care to, and observation of, patients in the ward, as distinguished from providing individual special nursing care, which, if required, had to be furnished through the admitting doctor and relatives; the policy pursued by the nurses in the hospital, as a protective measure to all patients in the ward, was to have at all times a nurse in, or maintaining close observation of, the main corridor, which led to the unlocked outer door; midway down, and off, such main corridor was a small office with a desk and telephone (from which desk and telephone the main corridor was not observable, according to plaintiff husband's testimony); plaintiff wife occupied a room just off the main corridor; on the evening in question, January 1, 1958, the ward was occupied by 14 patients, seven mental and seven general patients; there were on duty two psychiatric nurses and one practical nurse; at about 9:30 p. m., the practical nurse administered to plaintiff wife, in her room, following which the nurse left the ward for a coffee break downstairs; immediately thereafter one of the psychiatric nurses came to plaintiff wife's room to prepare her for the night; plain-

tiff wife went across the hall to the bathroom, some 10 to 28 feet distant, the nurse remaining in the room; at or about this time the remaining nurse (who did not appear as a witness) was not in the main corridor (there being evidence she was in the small office telephoning); as plaintiff wife left the bathroom, she fled down the main corridor and through the outer door; the noise attracted the attention of the nurses, and immediate pursuit ensued; up to this time plaintiff wife's stay at the hospital had been generally uneventful, her attitude fluctuating between depression and sociability, without overt indications of suicide, or self-injury; the hospital staff recognized generally that a diagnosis of agitated depression carried with it a potential of suicide or self-injury, and that the initial directions of the admitting psychiatrist, "watch patient—depressed," meant she should be kept under close observation.

Against this background, plaintiffs alleged, and the trial court submitted to the jury, seven specifications of negligence consisting, in substance, of failing to: (1) provide proper supervision over plaintiff wife; (2) provide constant attendance; (3) provide proper care and treatment; (4) instruct employees to remain in constant attendance over plaintiff wife; (5) exercise the required degree of care; (6) guard against any injurious acts; and (7) adequately restrain and guard plaintiff wife.

Defendant hospital excepted to the giving of each specification of negligence, and further to instruction No. 7, which permitted the jury to return a verdict of liability upon the basis of any one or more of such specifications.

The trial court, in granting judgment notwithstanding the verdict, assigned as his reason insufficiency of the evidence to sustain a verdict of liability upon any of the specifications.

Relative to the general standard of care devolving upon a private hospital, we held in *Cochran v. Harrison Memorial Hospital*, 42 Wn. (2d) 264, 270, 254 P. (2d) 752, and reiterated in *Roth v. Havens, Inc.*, 56 Wn. (2d) 393, 353 P. (2d) 159:

"As was said in *Smith v. Simpson*, 221 Mo. App. 550, 288 S. W. 69:

" 'It is not disputed that all the authorities hold that private hospitals owe to their patients such ordinary care and attention as the mental and physical condition of such patients reasonably requires. The law demands reasonable care, such care as a reasonable man would take under the circumstances existing, but no man is required to take measures against a danger which the circumstances as known to him do not suggest as likely to happen.' "

It is plaintiffs' contention that, because a potential of suicide, self-injury, or escape is present, in varying degrees, in any depressed patient, and because plaintiff wife was diagnosed, to the hospital's knowledge, as an "agitated" depressed patient, the hospital, in effect, owed her the duty of personal attention, tantamount to *constant* observation, guarding and/or restriction.

■ With this contention we cannot agree because (a) the admitting and treating psychiatrist did not order special, as distinguished from general, nursing observation and attendance; (b) the hospital had no knowledge of any prior threats or attempts of suicide, or self-injury, on the part of plaintiff wife; (c) plaintiff wife's conduct and actions, in the hospital, between December 23, 1957, and January 1, 1958, did not put the hospital upon notice of any abnormal tendencies; and (d) the hospital did not purport to provide custody or supervision over dangerously disturbed patients. Under such circumstances, the hospital was not, under the aforementioned rule, required to take such measures, as advocated by plaintiffs, to guard against the danger of plaintiff wife's impetuously fleeing from the hospital.

We are satisfied, under the evidence in this case, the trial court erred in submitting to the jury those specifications of negligence embracing the theory of constant observation, restraint and/or attendance.

Viewing the evidence, however, in a light most favorable to plaintiffs, as we and the trial court are required to do, *(Day v. Frazer,* 59 Wn. (2d) 659, 369 P. (2d) 859), we are constrained to differ with the trial court, and to con-

clude the evidence sufficient to sustain a finding of liability upon other bases.

■ The hospital, as indicated, was operating upon the psychiatric concept whereby mental patients, in its custodial care, were allowed as much freedom as possible in an effort to resocialize them. Such type of therapy, within the framework of the evidence presented, would appear to involve a reasonably foreseeable risk that patients, such as plaintiff wife, may impetuously flee. The exercise of ordinary care could well compel the maintenance of reasonable safeguards against such risk, consistent with the type of treatment, the patients' mental condition, and the physical surroundings. The defendant hospital staff recognized this in their practice or policy of either having a nurse present in the main corridor leading to the unlocked outer door, or in maintaining vigilant observation thereof. At the time in question, one of the nurses on duty was downstairs, another in plaintiff wife's room, and the third purportedly in the office telephoning or otherwise out of visual contact with the main corridor. Whether the defendant hospital was, under these conditions, providing to plaintiff wife such custodial care or attention as a reasonable man would provide under the circumstances, we conclude presented a question for the jury.

We hold, therefore, that the trial court erred in granting defendant hospital judgment notwithstanding the verdict, and in denying the alternative motion for a new trial.

Summarizing: The order denying plaintiffs' motion for a new trial as to defendants Levy is sustained, with costs to such defendants; the order granting judgment notwithstanding the verdict and denying the alternative motion for new trial as to defendant Havens, Incorporated, is reversed, and the cause remanded for new trial as to such defendant, costs to abide the result.

FINLEY, C. J., DONWORTH, OTT, and HUNTER, JJ., concur.