[No. 898-1.     Division One—Panel 2.     January 3, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES RAY
FINKLEY, *Appellant*.

*Lundin, Estep, Sindell & Haley* and *Donald D. Haley*, for
appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney*, and *Frederick L. Yeatts, Deputy*, for respondent.

FARRIS, A.C.J.—Mr. Finkley appeals from his conviction
of the crimes of rape, burglary in the first degree and
assault in the second degree, following a jury trial. The
legal sufficiency of the evidence to support the verdict of
guilty is not in dispute. The appeal raises constitutional
questions.

As his first assignment of error, Mr. Finkley alleges that
prejudicial information was contained in exhibit 18, a medical record of Harborview Medical Center, which was ad-

mitted over his objection. The portion to which error is assigned reads as follows:

> Diagnosis: Said to have been rape—abd cramps;
> If Accident, How? Said to have been raped;
> Time & Date of Accident: 4:00 A.M.—4/12/70;
> Place of Accident: 15th Ave. Capital Hill;
> Diagnosis: Motile sperm in vag. vault;
> Micro: Motile sperm observed.

At the trial, certain language in the exhibit was objected to specifically by Mr. Finkley. The portion of the exhibit which stated how the alleged rape occurred was expunged from the exhibit upon the agreement of counsel and at the discretion of the court. The record reflects the following colloquy, relative to the court's admitting exhibit 18:

> MR. YEATTS: Has 18 been admitted, your Honor, with the modification as cut out?

> THE COURT: You have seen it as changed, Mr. Richey? Could you state for the record your objection to 18 as it now stands?

> MR. RICHEY: If the Court please, we object to the introduction of 18 on the grounds previously stated, that is, it is an exhibit which will indicate findings of a doctor when the doctor is not here available to testify, and we, the defense, will not be able to cross-examine that doctor relative to his findings. . . . We feel this is a refusal of the defendant's right that is guaranteed to him to face his accusers under the Sixth Amendment of the Constitution.

The trial court then admitted the exhibit into evidence, basing its decision on the Uniform Business Records as Evidence Act, RCW 5.45.020 which provides:

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

The appellant argues for a strict interpretation of

the statute. We agree that the statute should be strictly construed. Its effect is to limit a party's opportunity to cross-examine and confront at trial the individual who prepared the record. Such a right cannot be regarded lightly.

The basis of defense counsel's objection at trial to the admission of the exhibit was that it denied defendant his Sixth Amendment right to confront the witness against him. That question has been resolved:

> [T]he right of confrontation may not be invoked to exclude evidence otherwise admissible under well-established legitimate exceptions to the hearsay rule. Kay v. United States, 255 F.2d 476, 4 C.C.A. (1958); Matthews v. United States, 217 F.2d 409, 5 C.C.A. (1954); United States v. Leathers, 135 F.2d 507, 2 C.C.A. (1943); 5 Wigmore, Evidence, 1397.

McDaniel v. United States, 343 F.2d 785, 789 (5th Cir. 1965).

The question here is whether the requirements of the Uniform Business Records as Evidence Act, RCW 5.45.020, were met and whether a proper and sufficient foundation was laid for the admission of the exhibit. On the basis of the record before us, both questions must be answered in the affirmative. The witness, Irene Dynes, testified that she was the medical records librarian of Harborview Medical Center, that during the normal course of her duties she maintains the medical records for the hospital, and that exhibit 18 was a record regularly kept by the hospital. She further identified exhibit 18 as a true copy of the original medical record and testified that such records are filled in at the time the patient is examined or treated. Here the medical record was a brief 1-page report with only a single factual allegation ("Motile sperm observed") that could be potentially damaging to the appellant; nothing in exhibit 18 purported to connect the accused with the alleged crime.[1]

---

[1] Thus, appellant's reliance upon State v. White, 72 Wn.2d 524, 531, 433 P.2d 682 (1967), is not well-founded, since the attending physician's "Progress Record" in White "contained detailed hearsay statements describing criminal acts of carnal knowledge committed by the defendant . . ." and the attending physician's report referred specifically to the defendant as the person who performed the criminal acts.

Mr. Finkley argues that the use of the word "rape" in the exhibit was sufficient reason to exclude the exhibit. This argument was not made to the trial court. Had such argument been made, the trial court could have considered the removal of the word from the exhibit as it did the other language to which specific objection was made.

In the absence of a specific request by defense counsel, the trial court under the facts here was not required on its own initiative to expunge this word from the exhibit, since the jury when reading the exhibit would necessarily conclude that the reference to rape was an allegation of the victim, rather than a statement of fact.

■ The trial court admitted exhibit 8, photographs of Mr. Finkley, over his objection. Mr. Finkley argues that use of the photographs taken while he was in custody and later shown to witnesses out of his presence and out of the presence of his attorney after his arrest, constituted reversible error based on the assistance of counsel provision of the sixth amendment to the United States Constitution, and the interpretation given this provision in *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967) and *United States v. Zeiler*, 427 F.2d 1305 (3d Cir. 1970). We reject this argument. We are aware of the dangers of suggestion inherent in a photographic identification. The absence of the defendant and his counsel when the photographs are shown limits his ability to reconstruct at trial what took place at the time the identification was made. Standing alone, however, this method of police investigation and identification of a criminal suspect does not violate the Sixth Amendment right of the accused to the assistance of counsel. *United States v. Ballard*, 423 F.2d 127 (5th Cir. 1970); *Rech v. United States*, 410 F.2d 1131 (10th Cir.), *cert. denied*, 396 U.S. 970, 24 L. Ed. 2d 438, 90 S. Ct. 457 (1969); *United States v. Bennett*, 409 F.2d 888 (2d Cir.), *cert. denied, sub nom., Haywood v. United States*, 396 U.S. 852, 24 L. Ed. 2d 101, 90 S. Ct. 113, *rehearing denied*, 396 U.S. 949, 24 L. Ed. 2d 256, 90 S. Ct. 376 (1969); *United States v. Robinson*, 406 F.2d 64 (7th Cir. 1969), *cert. denied*, 395 U.S.

926, 23 L. Ed. 2d 243, 89 S. Ct. 1783 (1969). *See also United States v. Collins*, 416 F.2d 696 (4th Cir. 1969), *cert. denied*, 396 U.S. 1025, 24 L. Ed. 2d 519, 90 S. Ct. 601 (1970); *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *People v. Lawrence*, 4 Cal. 3d 273, 481 P.2d 212, 93 Cal. Rptr. 204 (1971); *State v. Cerny*, 78 Wn.2d 845, 480 P.2d 199 (1971); *State v. Favro*, 5 Wn. App. 311, 487 P.2d 261 (1971).

The issue turns upon whether the photographs or the identification procedure reflected unusual emphasis on the accused. If so, the trial court in the exercise of reasonable discretion should disallow the evidence and the failure to do so would be an abuse of discretion. We adhere to the rule pronounced in *Simmons*, 390 U.S. at 384:

> Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*See State v. Gefeller*, 76 Wn.2d 449, 458 P.2d 17 (1969) and *State v. Kearney*, 75 Wn.2d 168, 449 P.2d 400 (1969).

The photographs used in the pre-lineup identification do not of themselves reflect unusual emphasis on Mr. Finkley. All seven of those pictured appeared to be of a comparable age, with no distinctive features, except that one of them

was not clearly a black, as contrasted with Mr. Finkley and the other five persons pictured.

Furthermore, the record reflects that the photographic identification procedure was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. at 384. Under such circumstances, the accused cannot prevail in an argument based on violation of the Sixth Amendment; he is limited to cross-examination of the witnesses and closing argument. *See State v. Cerny, supra; Simmons v. United States, supra* and *People v. Lawrence, supra.* Here the record demonstrates that appellant's trial counsel scrupulously inquired into the photographic identification procedure on cross-examination. The admission of the photographs was not an abuse of the trial court's discretion.

We reject the argument that the use of the "mug shot" indicated guilt of a crime other than those of which the accused was charged.[2] Nothing in the record identified the photographs as "mug shots." Mr. Finkley had never been arrested for a felony offense prior to the incidents in question.

Nor do we find that the testimony of the police officers with regard to their observing Mr. Finkley at the police station was unreasonably prejudicial to him. This testimony was necessarily related to observations concerning the events of April 19th, of which the accused was charged. The evidence was relevant since the identification of the accused was in issue and his hair style, sideburns and moustache had been modified in the interval between arrest and trial.

There was no error in admitting the statement of Dr. Abrams, the treating physician, that he received a telephone call alleging that there was a patient in the emergency room who claimed that she had been raped and that he should examine her. Nor was there error in admitting

---

[2] For a case in which this same contention was rejected, see *United States v. Robinson,* 406 F.2d 64 (7th Cir. 1969).

284

the statement of Officer Stoke that he received a telephone call that someone had been abducted at a house by a black male in an automobile that was described to him. These statements were not admitted for the truth of their contents. Rather, they were statements made by witnesses to explain their involvement in the case. As such, they were not "hearsay" evidence.

Affirmed.

JAMES and SWANSON, JJ., concur.

Petition for rehearing denied February 25, 1972.

Review denied by Supreme Court April 24, 1972.