[No. 47288–2.   En Banc.   September 3, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. RONALD
DWAYNE EVANS, *Petitioner.*

*Wm. H. Nielsen,* for petitioner.

*C. Thomas Moser, Prosecuting Attorney,* for respondent.

DIMMICK, J.—This case concerns the State's introduction of defendant's postarrest silence and other alleged prosecutorial misconduct. A jury found the defendant guilty of second degree burglary. The Court of Appeals affirmed. We likewise affirm.

On July 23, 1978, at 11:40 p.m., the defendant, Ronald Evans, and his younger brother were discovered hiding under the desk in the offices of a Sedro Woolley newspaper. A nearby safe had been partially broken into, pieces of the hinge were on the floor as were various tools, including hammers and chisels. Cabinets and drawers throughout the office were open. The defendant was advised of his *Miranda* rights in the patrol car and again at the police station where he signed an acknowledgment and waiver of his *Miranda* rights. Officer Pittman and Lieutenant Heitman of the Sedro Woolley Police Department asked the defendant if there was anything he wanted to say. The defendant indicated he did not want to make a statement. However, shortly thereafter, according to Heitman, Evans volunteered the following: "Did they get you out of bed tonight, too?" To this Heitman responded, "Yes, I had to come and see what you were up to." Evans replied, "No good. I wish I had been home in bed."

At trial both officers were asked whether the defendant had been advised of his *Miranda* rights. Each affirmed and testified that after such advisement Evans declined to talk to Lieutenant Heitman except for the above quoted statement. Defense counsel objected to the testimony regarding silence; the objections were promptly sustained. After the second objection, the trial judge instructed the jury to disregard the question and answer. He did allow into testimony the quoted statement of the defendant. It appears from the record this statement was the sought–after testimony which unfortunately elicited the second mention of defendant's silence.

The defendant did not take the stand in his own behalf. The defense was that he did not possess the requisite intent due to intoxication and at most could only be found guilty of criminal trespass. Witnesses testified that defendant had a drinking problem and had been drinking on the evening of July 23. His brother testified they were drunk and that they only went into the building looking for a place to "pass out".

The defendant contends that his conviction must be overturned on the basis that the State's introduction of testimony that defendant was silent following receipt of his *Miranda* warnings was unduly prejudicial and resulted in a denial of defendant's due process right.

The United States Supreme Court has ruled that the use, for impeachment purposes, of defendant's silence following receipt of *Miranda* warnings is fundamentally unfair and therefore violates the due process clause of the Fourteenth Amendment since the giving of the warnings implicitly assures defendant that silence will carry no penalty. *Doyle v. Ohio,* 426 U.S. 610, 617–19, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). In so ruling, the Supreme Court declared that postarrest silence following such warnings is "insolubly ambiguous". *Doyle,* at 617.

We have extended this rule to instances where the State elicits testimony on defendant's postarrest silence in its case in chief and refers to such silence in its closing argu-

4

ment. *State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979). According to our court,

> The highly prejudicial suggestion that defendant's post-arrest silence is consistent with guilt, and not with his exculpating story at trial, can be made just as effectively by questioning the arresting officer or commenting in closing argument as by questioning defendant himself.

*State v. Fricks, supra* at 396.

The Court of Appeals, in an unpublished opinion, concluded that the error was not prejudicial as "the jury would probably not have rendered a different verdict," both because Evans did not testify in his own behalf and consequently his credibility and the truth of an exculpatory statement were not before the jury, and because of the substantial evidence in support of the State's position. The defendant contends that even though he did not testify in his own behalf, he did call witnesses to present his theory of the case and in view of the intoxication defense, it was inappropriate to say that the defendant's postarrest silence was not relevant to any of the issues.

The testimony was error. The question is whether the error was prejudicial, requiring a new trial.

■ Although the error may have been constitutional in magnitude, we agree with the Court of Appeals that it was harmless. The Court of Appeals, however, employed a less rigorous standard of review than mandated by the United States Supreme Court. In *Chapman v. California,* 386 U.S. 18, 22, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967), the Supreme Court recognized that there were some constitutional errors which in the particular case may be so insignificant as to be considered harmless. But, according to the court, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless *beyond a reasonable doubt.*" (Italics ours.) *Chapman,* at 24. *See also State v. Stephens,* 93 Wn.2d 186, 607 P.2d 304 (1980); *State v. Vargas,* 25 Wn. App. 809, 610 P.2d 1 (1980) (reviewing the history of our courts' tests for determining whether constitutional error is harmless).

A thorough review of the record in the instant case reveals that there was overwhelming evidence supporting the jury's verdict. As such, we find that the error was harmless beyond a reasonable doubt.

Defendant next claims that he was not afforded a fair trial because of several instances of prosecutorial misconduct. The alleged misconduct, in addition to questioning the officers about defendant's postarrest silence, included asking leading questions and eliciting hearsay responses from the witnesses. Moreover, defendant claims that the police injected prejudicial material by referring to defendant as a person with whom the police have had various prior contacts. (This arose when the officer testified he had seen defendant drunk in the past and in his opinion he was *not* drunk on the night in question.) The trial judge ruled on the objections in an appropriate manner.

Defendant is entitled to a trial free from prejudicial error, not one that is totally error free. *See State v. White,* 72 Wn.2d 524, 531, 433 P.2d 682 (1967). In determining whether prosecutorial misconduct was present, we must determine whether there was substantial likelihood that the misconduct affected the jury's verdict, thereby depriving the defendant of his right to a fair trial. *State v. Music,* 79 Wn.2d 699, 715, 489 P.2d 159 (1971); *State v. Wilson,* 20 Wn. App. 592, 595, 581 P.2d 592 (1978). In reviewing the record, it is clear that the alleged instances of misconduct, taken individually or as a whole, did not affect the jury's verdict.

Affirmed.

ROSELLINI, STAFFORD, UTTER, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

BRACHTENBACH, C.J. (concurring)—I concur, for reasons stated later, in the result reached by the majority. However, I think that the determination whether a constitutional error is harmless is significantly more complicated than the majority's treatment would indicate. Reaching the correct

result in this case should not obscure the complexity which will exist in subsequent cases.

The problem of harmless error has long plagued the courts. For a brief summary of the history of the doctrine, *see* Mause, *Harmless Constitutional Error: The Implications of Chapman v. California,* 53 Minn. L. Rev. 519, 519 (1969); Saltzburg, *The Harm of Harmless Error,* 59 Va. L. Rev. 988, 999–1002 (1973); Note, *Harmless Constitutional Error: A Reappraisal,* 83 Harv. L. Rev. 814, 814 (1970).

The standard which must be met to hold that a federal constitutional error[1] is harmless originates with *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967). The court in *Chapman,* for the first time, held that some errors of a constitutional magnitude do not require reversal. *Chapman, supra* at 22. The court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman, supra* at 24.

Thus the rule of harmless constitutional error is clear. What is not clear from *Chapman* is the proper *analysis* or *methodology* an appellate court must use in determining if a constitutional error is "harmless beyond a reasonable doubt." *See* Field, *Assessing the Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale,* 125 U. Pa. L. Rev. 15, 27 (1976); Note, *supra* at 817.

The cases and literature suggest two distinct and vastly different tests to determine whether the constitutional violation is harmless. One is the "contribution" analysis, the other is the "overwhelming untainted evidence" test. Under the first approach, the appellate court looks only at the tainted evidence and asks if it might have played a part in

---

[1]The standard for determining if a *nonconstitutional* error is harmless is not the same as that for determining if a *constitutional* error is harmless. *See State v. Cunningham,* 93 Wn.2d 823, 831, 613 P.2d 1139 (1980); Saltzburg, *supra* at 999. *Compare Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967) (constitutional error) *with Kotteakos v. United States,* 328 U.S. 750, 90 L. Ed. 1557, 66 S. Ct. 1239 (1946) (nonconstitutional error).

(*i.e.,* "contributed to") the fact finder's determination of guilt. The amount and persuasiveness of the untainted evidence is not considered. *See* Field, *supra* at 15, 16–19. If the tainted evidence could plausibly have played a part in the conviction, reversal is required.

The theory of the second test is that regardless of how "prejudicial the constitutional error was, a conviction should not be reversed if the case against the defendant was so strong that conviction was inevitable." Field, *supra* at 30. The appellate court examines the untainted evidence alone and finds the error harmless if the untainted evidence is so overwhelming that it *necessarily* leads to a finding of guilt. If the untainted evidence is merely *sufficient* to support the conviction, reversal is required. *See Commonwealth v. Story,* 476 Pa. 391, 412–13, 383 A.2d 155, 166 (1978). Field, *supra* at 17–18 & n.9. In effect, a conviction will be allowed to stand, although a constitutional error did, or could have, played a part in it, if there was other untainted overwhelming evidence which necessarily supported the conviction.

*Chapman's* analysis suggests the court meant to adopt a "contribution test" as the method for assessing the harmfulness of a constitutional error. In addition, the *Chapman* court appeared to have perceived the "overwhelming untainted evidence test" to be contrary to the position it adopted. Yet, in one part of its opinion, *Chapman, supra* at 25–26, the court seemed to imply that the untainted evidence could be weighed and the error thereby possibly found harmless. *See* Field, *supra* at 26–27; Note, *supra* at 817.

While *Chapman* appears to indicate that the "contribution test" is the appropriate methodology, neither test is inconsistent with *Chapman's* ultimate "beyond a reasonable doubt" standard. "Looking at the error itself, one can require certainty beyond a reasonable doubt that it would not influence a jury; focusing on the other [untainted] evidence, one can require certainty beyond a reasonable doubt that it compels a guilty verdict." Field, *supra* at 18. *Cf.*

*People v. Ross,* 67 Cal. 2d 64, 84–86, 429 P.2d 606, 60 Cal. Rptr. 254 (1967) (Traynor, C.J., dissenting) (arguing that *Chapman* can be read to support either test, but in fact supports the contribution test); *Ross v. California, rev'd per curiam,* 391 U.S. 470, 20 L. Ed. 2d 750, 88 S. Ct. 1850 (1968); C. McCormick, *Evidence* § 183, at 431 & n.91 (2d ed. 1972) (arguing that *Chapman* can be read to support either test but that a standard similar to the overwhelming evidence test seems to be more proper).

While *Chapman* probably indicates that the contribution test is the proper methodology for determining whether a constitutional error was harmless beyond a reasonable doubt, *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969), casts doubt on this conclusion and further obfuscates the law in this area. In *Harrington* the court held that the tainted evidence was cumulative of untainted evidence and that the untainted evidence was "so overwhelming" that the error was harmless under *Chapman*'s beyond a reasonable doubt standard. *Harrington, supra* at 254.

The dissenting opinion in *Harrington* contended that the majority in effect had overruled *Chapman* by "shifting the inquiry from whether the constitutional error contributed to the conviction to whether the untainted evidence provided 'overwhelming' support for the conviction", thus violating what it characterized as *Chapman*'s proscription against permitting a constitutional error to make *any* contribution to a conviction. *Harrington, supra* at 255 (Brennan, J., dissenting). The dissent contended that *Chapman* had expressly rejected the overwhelming untainted evidence test. *Harrington, supra* at 256.

In an apparent response to this dissent, the majority asserted that it was reaffirming *Chapman* and it was not diluting it by inference. *Harrington, supra* at 254. While *Harrington* clearly retained *Chapman*'s ultimate harmless beyond a reasonable doubt standard, there appears to be general agreement that *Harrington* apparently approved a methodology consistent with the overwhelming evidence

test. *See State v. Nist,* 77 Wn.2d 227, 234, 461 P.2d 322 (1969); C. McCormick, *supra* at 432; Note, *supra* at 819. Due to the imprecise analysis in *Harrington,* however, it is not certain which methodology the court in fact employed. *See* Field, *supra* at 38, 58, 60.

Thus, *Chapman* and *Harrington* do not indicate clearly which methodology is proper for determining if a constitutional error is harmless beyond a reasonable doubt, and no consistent pattern emerges from other Supreme Court cases. Perhaps the majority of the cases suggest the overwhelming untainted evidence test is proper. *See, e.g., Brown v. United States,* 411 U.S. 223, 231, 36 L. Ed. 2d 208, 93 S. Ct. 1565 (1973); *Milton v. Wainwright,* 407 U.S. 371, 373, 377, 33 L. Ed. 2d 1, 92 S. Ct. 2174 (1972); *Schneble v. Florida,* 405 U.S. 427, 430–31, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972); Field, *supra* at 21, 32. Other cases suggest that the contribution test is the correct methodology. *See, e.g., Bumper v. North Carolina,* 391 U.S. 543, 550, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (1968); *Price v. Georgia,* 398 U.S. 323, 331, 26 L. Ed. 2d 300, 90 S. Ct. 1757 (1970); *Fontaine v. California,* 390 U.S. 593, 596, 20 L. Ed. 2d 154, 88 S. Ct. 1229 (1968) (per curiam); *Ross v. California,* 391 U.S. 470, 20 L. Ed. 2d 750, 88 S. Ct. 1850 (1968) (per curiam) (summarily reversing a case in which the California Supreme Court found no harmful error because of the strength of the untainted evidence and in which Justice Traynor's dissent argued that *Chapman* mandates a contribution test). Given the apparently unrecognized chameleonic quality of harmless error methodology, it is not surprising that support can properly be found for the contribution test, the overwhelming untainted evidence test, or even, to a lesser extent, the "cumulative" test.[2] *See* Field, *supra* at 16. The "Supreme Court opinions slip back and

---

[2]The cumulative test asks whether the tainted evidence is merely duplicative of other untainted evidence and is therefore harmless. *See* Field, *supra* at 16, 37. *Harrington,* for example, employed cumulative methodology to a certain extent. *See* Field, *supra* at 37. For a general discussion of the cumulative test, *see* Field, *supra* at 37–58.

forth from one suggested [methodology] to another, without explicit notice of the change, though the change could produce different results in many cases." [The appropriate methodology therefore] "is less than lucid." Field, *supra* at 32; *see Commonwealth v. Marini,* 375 Mass. 510, 512–22, 378 N.E.2d 51 (1978).

Our cases have been flawed by similarly confusing inconsistency. Shortly after *Harrington* was decided we characterized that case as holding that a constitutional error "may be held harmless if there is 'overwhelming' untainted evidence to support the conviction." *State v. Nist,* 77 Wn.2d 227, 234, 461 P.2d 322 (1969). Two years later we cited none of the applicable Supreme Court cases and arguably employed a probability test in a case involving comment on defendant's silence. *State v. Gibson,* 79 Wn.2d 856, 861, 490 P.2d 874 (1971). In a later case involving comment on silence we appeared to intermingle in an unclear fashion the overwhelming untainted evidence test and *Gibson*'s probability test. *State v. Fricks,* 91 Wn.2d 391, 396–97, 588 P.2d 1328 (1979). In a recent case we cited *Chapman*'s rule that a constitutional error must be harmless beyond a reasonable doubt, and refused to hold the error harmless because the court was unable to conclude that the error "'in no way affected the final outcome of the case.'" *State v. Stephens,* 93 Wn.2d 186, 191, 607 P.2d 304 (1980). This quotation is arguably consistent with the contribution test.

For a general discussion of the inconsistent course of Washington decisions in this area, *see State v. Vargas,* 25 Wn. App. 809, 812–16, 610 P.2d 1 (1980).

In this case there was no error regardless of which approach is adopted for the reasons and authority stated in the concurrence by Justice Dore with whom I agree.

In the appropriate case I believe we must examine the foundations and purposes of this doctrine and then formulate a consistent methodology by which we satisfy the purposes of the doctrine and its constitutional foundation.

DORE, J., concurs with BRACHTENBACH, C.J.

Dore, J. (concurring)—Defendant raised the issue of intoxication as an affirmative defense. Because defendant was arrested inside the newspaper office, the main issue the jury had to decide was whether defendant, at the time of breaking into the building, was so intoxicated that he couldn't formulate an intent to commit the crime of burglary. If he was, then under the court's instructions as to the law, he should have been acquitted.

One of the more important ways to test sobriety is one's speech, reflecting a person's state of mind. If one is articulate and easily formulates concepts and is responsive to questions, obviously he is not intoxicated.

The jury could have found that Officer Heitman's testimony that defendant didn't want to make a statement, after having been given his *Miranda* warnings (*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966)), was evidence indicating defendant understood his rights, but that he wisely didn't want to make damaging statements as to his guilt; that he was alert; had full command of his faculties, and that he fully comprehended his situation and was sober. On the other hand, if the defendant had spoken to the arresting officer in an irrational manner, the jury permissibly could infer defendant was intoxicated and not able to formulate a criminal intent to commit the crime of burglary.

In *Williams v. State*, 242 Ga. 757, 760, 251 S.E.2d 254 (1978), the defendant had pleaded insanity at the time of commission of the acts charged in the indictment. The testimony was admitted over objection that it was opinion evidence, to show the mental awareness of the defendant at the time of his arrest. The Georgia court found no error and stated:

> In the present case the witness' comment was: "Well, Detective Lewis was advising him of his rights and asked him if he wanted to make any statements and he refused to make any statement."
>
> The testimony was allowed for the purpose of showing appellant's awareness and mental competence at the time

12

of arrest and its introduction does not deny appellant due process under Doyle [*v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976)].

In *United States v. Fairchild,* 505 F.2d 1378, 1383 (5th Cir. 1975), the court held that a criminal defendant may, by his conduct, make otherwise constitutionally inadmissible evidence admissible for certain purposes.

> *Miranda* establishes that the prosecution may not use as a part of its case in chief a criminal defendant's silence following his arrest and warning. This evidence, even though it might be relevant and probative, is normally excluded. But it is important to note that it is excluded for the purpose of protecting certain rights of the defendant. It is not excluded so that the defendant may freely and falsely create the impression that he has cooperated with the police when, in fact, he has not. After getting Agent Israelson to admit that his client had no previous criminal history and had voluntarily provided handwriting samples, Fairchild's counsel attempted to create this impression when he asked, "During the period of time that this investigation has been going on, to your knowledge has Mr. Fairchild cooperated fully with the FBI and U. S. Attorney's office in responding with anything that you all wanted?" Having thus raised the question of his cooperation with the law enforcement authorities, Fairchild opened the door to a full and not just a selective development of that subject. United States v. Paquet, 484 F.2d 208 (5th Cir. 1973). . . . The fact that Fairchild's silence would have been excluded for constitutional reasons does not change the situation. Constitutional rights, like others, may be waived; and a criminal defendant may, by his conduct, make otherwise constitutionally inadmissible evidence admissible for certain purposes. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Here the evidence of Fairchild's Miranda silence was admissible for the purpose of rebutting the impression which he attempted to create: that he cooperated fully with the law enforcement authorities. Thus, it was not error for the trial court to admit Detective Hobbs' testimony concerning Fairchild's silence at the police station following his *Miranda* warnings.

(Footnote omitted.)

In the subject case, defendant produced a number of

witnesses as to his intoxication earlier in the evening, including his brother who stated that they were so drunk when they broke into the building they were only looking for a place to "pass out".

When defendant offered such testimony he waived his constitutional right regarding silence and made otherwise constitutionally inadmissible evidence admissible for the purpose of showing his sobriety and understanding of what he was doing, which evidenced his intent to commit the crime of burglary. Defendant, of course, was entitled to a limiting instruction to the jury that the defendant's statement could only be taken into consideration on the affirmative defense of intoxication.

## CONCLUSION

I find no error in the prosecution asking questions to elicit defendant's postarrest statements, after he was given his *Miranda* warnings, when he pleaded "intoxication" as an affirmative defense and introduced testimony affirmatively as to that subject matter.

Reconsideration denied October 21, 1981.