

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUN 0 4 2015

CHIEF JUSTICE

This opinion was filed for record
at 8:00 AM on June 4, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 89976-2 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| ROBERT EUGENE BARRY, | ) | |
| | ) | Filed JUN 0 4 2015 |
| Petitioner. | ) | |
| | ) | |

WIGGINS, J.—Robert Barry appeals his conviction on two counts of child molestation, claiming that the trial court's instruction in response to a jury question violated his Fifth Amendment and Sixth Amendment rights under the United States Constitution. The jury asked the court whether it may consider "observations of the defendant's actions-demeanor during the court case" as "evidence." In response, the trial court instructed the jury that "[e]vidence includes what you witness in the courtroom." All parties agree that the record contains no references whatsoever to Barry's in-court demeanor and so we have no way of determining what aspects of Barry's "demeanor" drew the jury's attention and whether the jury's observations were favorable or unfavorable to Barry. We hold that the trial court's instruction did not amount to constitutional error; we instead apply the nonconstitutional error standard and affirm.

The Fifth Amendment does not extend to the jury's generic reference to "actions-demeanor," and the Sixth Amendment does not transform all evidentiary errors into errors of constitutional magnitude. Consequently, no constitutional error occurred. Under the standard for nonconstitutional error, the record's silence on Barry's demeanor makes it impossible to determine that Barry was prejudiced. For these reasons, we affirm.

## FACTS

The State charged Barry with two counts of child molestation in the first degree. During its deliberations, the jury sent a written question to the court: "Can we use as 'evidence' for deliberations our observations of the defendant's actions-demeanor during the court case?" The trial judge summoned counsel for both parties and informed them of the question. Neither the court nor counsel suggested anything that the jury may have observed that could have prompted the question. The record is devoid of any reference to the defendant's in-court demeanor and conduct.

After some discussion regarding the proper response to the jury's question, the court noted that it had read case law stating that evidence includes what is witnessed in the courtroom.[1] Defense counsel initially suggested that "perhaps the best answer is to just simply quote that language: 'The evidence includes what they witness in the

---

[1] Most likely, the trial court was referring to the North Carolina case *State v. Brown*, 320 N.C. 179, 358 S.E.2d 1, 15 (1987). The trial court stated that it had examined a case involving "a prosecutor's argument that called attention to a defendant's stoic appearance, suggesting that the defendant neither felt, nor indicated contrition for his or her act." The quoted language appears almost word-for-word in *Brown. See id.* at 14. The *Brown* court also announced a rule closely tracking the trial court's eventual response to the jury's question in this case. *See id.* at 15 ('[E]vidence is not only what [jurors] hear on the stand but what they witness in the courtroom.").

2

courtroom.'" The court rephrased that into "[e]vidence includes what you witness in the courtroom." Defense counsel then reconsidered, expressing concern that the jury might interpret that answer as inviting the jury to take the defendant's "actions and demeanor as testimony." Nonetheless, the trial court ultimately decided to provide its proposed response to the jury. Defense counsel objected on the record. The jury convicted Barry on one of the two counts; it was unable to reach a verdict on the remaining count. Barry appealed.

The Court of Appeals affirmed. *State v. Barry*, 179 Wn. App. 175, 317 P.3d 528 (2014). While the Court of Appeals noted that the trial court's instruction was "improper in its overbreadth," *id.* at 178, it rejected Barry's constitutional arguments and held that the instruction was a nonconstitutional evidentiary error—i.e., the trial court let the jury consider something that was not admissible evidence. *Id.* at 181-82. Under the standard for this type of error, Barry had to show prejudice in order to obtain reversal. *Id.* The court held that Barry could not show such prejudice because the record contained no references to the defendant's conduct and behavior during trial. *Id.* at 182. We granted Barry's petition for review. 180 Wn.2d 1021, 328 P.3d 903 (2014).

STANDARD OF REVIEW

Our standard of review depends on whether the court's error[2] was constitutional or nonconstitutional. The Supreme Court held in *Chapman v. California* that "before a federal *constitutional* error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. 18, 24, 87 S. Ct.

---

[2] As explained below, we accept for the purposes of this opinion the State's concession that the court's instruction was erroneous.

824, 17 L. Ed. 2d 705 (1967) (emphasis added). This stringent standard can be met if there is overwhelming evidence of the defendant's guilt that is not tainted by the error. *State v. Nist*, 77 Wn.2d 227, 233-34, 461 P.2d 322 (1969) (citing *Harrington v. California*, 395 U.S. 250, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969)). The State bears the burden of demonstrating harmlessness. *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013) (citing *Chapman*, 386 U.S. at 24).

"Where the error is *not* of constitutional magnitude, we apply the rule that 'error is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (emphasis added) (quoting *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)). Under this nonconstitutional harmless error standard, "an accused cannot avail himself of error as a ground for reversal unless it has been prejudicial." *Cunningham*, 93 Wn.2d at 831. In assessing whether the error was harmless, we must measure the admissible evidence of the defendant's guilt against the prejudice, if any, caused by the inadmissible evidence. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997).

Barry argues, relying on *State v. Wanrow*, 88 Wn.2d 221, 237-38, 559 P.2d 548 (1977), that all "instructional errors" are presumed prejudicial and subject to an intermediate standard of review. This is incorrect. We presume prejudice only when the erroneous instruction was "'given on behalf of the party in whose favor the verdict was returned.'" *Id*. at 237 (quoting *State v. Golladay*, 78 Wn.2d 121, 139, 470 P.2d 191 (1970)). This requirement has been an essential component of this presumption

4

from its inception.[3] We noted in *State v. O'Hara* that "under *Wanrow*, situations could exist where a defendant or the trial court propose an erroneous jury instruction and the instruction is not presumptively prejudicial." 167 Wn.2d 91, 103, 217 P.3d 756 (2009). *Barry* presents precisely this situation. It was defense counsel that first suggested, during a back-and-forth discussion among defense counsel and the court, that the court instruct the jury that "evidence includes what you witness in the courtroom." The State agreed that the instruction was proper, but neither party proposed it nor advocated for the language that the court ultimately chose. The instruction thus was not given on the State's behalf, and we therefore do not presume prejudice.

## ANALYSIS

We reject Barry's constitutional arguments and apply the nonconstitutional harmless error standard. Under that standard, the record's silence regarding Barry's in-court demeanor is fatal to his appeal.

As noted above, the parties agree that the record lacks any evidence of the defendant's demeanor. Thus, neither party can "prove" one way or another whether the error was prejudicial. The burden, then, is the decisive issue, and that depends on

---

[3] The provenance of this rule can be traced as follows: *Wanrow* quoted from *Golladay*, 78 Wn.2d at 139, which, in turn, quoted *State v. Britton*, 27 Wn.2d 336, 341, 178 P.2d 341 (1947), which quoted 3 AM. JUR. *Appeal and Error* § 949, at 511 (1936), which cited to an *American Law Reports* annotation covering the Missouri civil case *Larsen v. Webb*, 332 Mo. 370, 58 S.W.2d 967, 971 (1932). *Larsen* cited to *Moloney v. Boatmen's Bank*, 288 Mo. 435, 232 S.W. 133, 140 (1921), which appears to be the original source of the rule. *Moloney* states, "When an erroneous instruction is given and the trial results in favor of the party at whose instance it was given, the presumption is that the error was prejudicial." *Id.* In *Moloney* and all of the other above-cited iterations of this rule, the presumption of prejudice attaches only if an erroneous instruction was given at the behest or on behalf of the prevailing party.

whether the error was nonconstitutional (burden on defendant to show prejudice) or constitutional (burden on prosecution to show harmlessness).

The State has conceded that the trial court's instruction was erroneous. We accept this concession for the purposes of this opinion and therefore do not reach whether a jury can *ever* consider a nontestifying defendant's demeanor or whether evidence may, in some circumstances, include other juror observations made during the course of a trial.[4]

## I. Fifth Amendment

The trial court's instruction did not violate the Fifth Amendment's proscription against self-incrimination.[5] Courts have almost unanimously held that the Fifth Amendment does not protect evidence of a defendant's actions or demeanor (hereinafter, demeanor evidence),[6] a conclusion consistent with Fifth Amendment jurisprudence and the plain meaning of "demeanor." Courts have determined that

---

[4] We note, however, that a prosecutor who comments on the defendant's demeanor is "strolling in a minefield" strewn with both constitutional and evidentiary hazards. *Borodine v. Douzanis*, 592 F.2d 1202, 1209 (1st Cir. 1979). The same holds true for courts that make rulings or issue instructions inviting the jury to consider a nontestifying defendant's demeanor. Rather than testing the limits of our holding in this case, both parties and courts would be well-advised to avoid drawing the jury's attention to subject matter outside the scope of admitted exhibits and the testimony of witnesses.

[5] "No person shall be . . . compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V.

[6] For our purposes, there is no practical distinction between "actions" and "demeanor" because the Fifth Amendment inquiry is the same regardless of the terminology used—i.e., a defendant's conduct is subject to the Fifth Amendment if that conduct is "testimonial." *See, e.g., State v. Easter*, 130 Wn.2d 228, 243, 922 P.2d 1285 (1996) (Fifth Amendment does not "prevent[] the State from introducing pre-arrest evidence of a non-testimonial nature about the accused, such as physical evidence, demeanor, conduct, or the like"); *Pennsylvania v. Muniz*, 496 U.S. 582, 595 n.9, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990) (the "definition [of 'testimonial'] applies to both verbal and nonverbal conduct"). Because there is no practical difference between "demeanor" and "actions" for Fifth Amendment purposes, and because the parties' briefs focus on the term "demeanor," we use to "demeanor" as shorthand for both terms.

consideration of demeanor evidence is constitutionally barred only if the demeanor is testimonial, or if it is merely the demeanor accompanying a defendant's silence or failure to testify. *See United States v. Clark*, 69 M.J. 438, 444-45 (C.A.A.F. 2011). There is no indication in the record that the question regarding Barry's courtroom demeanor was an oblique reference to testimonial conduct or Barry's failure to testify. Consequently, the trial court's response to the jury's inquiry did not violate Barry's Fifth Amendment rights.

### A. *"Demeanor" is not equivalent to "silence"*

We reject Barry's principal Fifth Amendment argument—that the court's response to the jury's question implicated the defendant's right to remain silent. In its general instructions, the trial court instructed the jury that "the fact that the defendant has not testified cannot be used to infer guilt or prejudice against him in any way," and that its instructions are to be taken as a whole. A jury is presumed to follow the court's instructions, *State v. Foster*, 135 Wn.2d 441, 472, 957 P.2d 712 (1998), and the record presents no indication that the jury failed to heed the court's instruction regarding the defendant's failure to testify in this case.

Barry argues, however, that because the court's instruction in response to the jury's question invited the jury to consider the defendant's demeanor, that instruction conflicted with its earlier instruction regarding the defendant's choice not to testify. But the trial court's instructions conflict only if we view a generic reference to the defendant's demeanor as equivalent to (or a proxy for) a comment on the defendant's failure to testify. The relevant case law and the plain meaning of "demeanor" do not

support such a conclusion—a bare reference to "demeanor," without more, is not tantamount to impermissible commentary on a defendant's failure to testify.

*Griffin v. California* established that the Fifth Amendment bars the prosecution from commenting on a defendant's failure to testify and forbids the court from instructing the jury that such silence is evidence of guilt. 380 U.S. 609, 609-15, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). While we have never adopted a specific rule governing when a *trial court's instruction* runs afoul of *Griffin*, we have examined the issue in the context of *prosecutorial comments* on a defendant's silence. Courts consider two factors when assessing whether a prosecutorial comment impermissibly comments on the defendant's silence: (1) "whether the prosecutor manifestly intended the remarks to be a comment on" the defendant's exercise of his right not to testify and (2) whether the jury would "'naturally and necessarily'" interpret the statement as a comment on the defendant's silence. *State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991) (quoting *State v. Crawford*, 21 Wn. App. 146, 152, 584 P.2d 442 (1978)).[7]

The trial court's instruction in this case meets neither prong of this test. The instruction plainly does not implicate the first part of the test: the prosecution never commented on the defendant's in-court conduct and the trial court clearly did not

---

[7] Our courts have stated this test as conjunctive, requiring both a showing of "manifest intent" by the prosecutor and a showing that the statement would "naturally and necessarily" be taken as a comment on silence. *See State v. Burke*, 163 Wn.2d 204, 216, 181 P.3d 1 (2008) (quoting *Crane*, 116 Wn.2d at 331). Other courts uniformly utilize a disjunctive test, however, requiring a showing of only one element or the other. *See, e.g., United States v. Robinson*, 651 F.2d 1188, 1197 (6th Cir. 1981) (citing *United States v. Rochan*, 563 F.2d 1246, 1249 (5th Cir. 1977)); *Brown v. United States*, 370 F.2d 874, 876 (9th Cir. 1966). The cases that first established this test support a disjunctive reading. *See Morrison v. United States*, 6 F.2d 809, 811 (8th Cir. 1925); *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir. 1955). In this case, we need not reach whether the test is conjunctive or disjunctive because, for the reasons stated below, the trial court's instruction satisfies neither part of the test.

intend for its instruction to be a comment on the defendant's silence. Consequently, this case involves no "manifest intent" to consider the defendant's failure to testify.

Likewise, the plain meaning of "demeanor" and case law examining demeanor evidence suggests that a generic reference to demeanor cannot be construed as naturally and necessarily referring to the defendant's failure to testify. The plain meaning of "demeanor" encompasses behavior extending well beyond mere silence or nonresponsiveness. *Webster's* defines "demeanor" as "behavior toward others : outward manner : CONDUCT[8]" or, alternatively, "BEARING, MIEN : facial appearance." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 599 (2002). *The American Heritage Dictionary* provides a similar definition—"[t]he way in which a person behaves; deportment"—and directs readers to the entry for "bearing" for a list of synonyms. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 496 (3d ed. 1994). Other suggested synonyms include "behavior," ROGET'S II THE NEW THESAURUS 299 (expanded ed. 1997), as well as "manner" and "comportment." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 529 (2d ed. 1987). While one may argue whether the above definitions encompass testimonial communications—an issue discussed below—they clearly demonstrate that demeanor is far more than a mere proxy for silence.

Courts examining the relationship between demeanor and a defendant's right to silence have reached the same conclusion. In *United States v. Velarde-Gomez*, the Ninth Circuit recognized that commenting on "demeanor" is distinct from commenting

---

[8] The small capital letters in the *Webster's* quotations indicate cross-references to synonymous words. WEBSTER'S, *supra*, at 18a (note 16.2).

on "silence," with only the former being permissible under the Fifth Amendment. 269 F.3d 1023, 1030-31 (9th Cir. 2001); *see also State v. Mauro*, 159 Ariz. 186, 766 P.2d 59, 70-71 (1988) ("The subject of the prosecutor's inquiry was defendant's demeanor, not his silence. Such an inquiry is a permissible one."); *United States v. Elkins*, 774 F.2d 530, 537-38 (1st Cir. 1985) (oblique references to a defendant's silence cannot be justified by characterizing them as "demeanor" evidence). In cases where a statement does not explicitly refer to the defendant's silence, the court must examine "the nature of the statement and the context in which it was offered . . . to determine the presence of error." *Elkins*, 774 F.2d at 537.[9]

Here, there is no indication that when the jury asked the court if it could consider the defendant's "demeanor," it really was thinking about the defendant's silence or choice not to testify. Moreover, the connection of "demeanor" with "actions" in the jury's question strongly suggests that the jury was thinking of something more affirmative than mere silence. The trial court's instruction does not naturally and necessarily refer to the defendant's silence.

---

[9] Admittedly, the line between commenting on "demeanor" and commenting on "silence" can become blurred when speechlessness is a key aspect of the demeanor being described. *See Cunningham v. Perini*, 655 F.2d 98, 100 (6th Cir. 1981) (no Fifth Amendment violation when the prosecutor rhetorically asked the jury, "'Was there any indignation manifested here or did he just sit there and stare,'" while watching a witness testify); *Christenson v. State*, 261 Ga. 80, 402 S.E.2d 41, 49-50 (1991) (prosecutor's comment that the defendant "sat right there where he is right now and never moved. Never shed a tear. Never got misty eyed . . ." was a comment on demeanor rather than silence). Regardless, the jury question that we are tasked with examining in *this* case cannot plausibly be read as a reference to the defendant's failure to testify.

The trial court's instruction does not meet either prong of the *Crane* test. We therefore reject Barry's attempt to read the court's answer as an instruction to the jury that it may consider the defendant's silence as evidence.

### B. *The jury question's generic reference to "demeanor" does not implicate "testimonial" conduct*

We also hold that demeanor is not inherently testimonial and that a generic reference to the defendant's "actions-demeanor" therefore does not implicate the Fifth Amendment. Fifth Amendment jurisprudence requires courts to examine whether the challenged words or conduct are "of a testimonial or communicative nature." *Schmerber v. California*, 384 U.S. 757, 761, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). The Supreme Court holds that "in order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States*, 487 U.S. 201, 210, 108 S. Ct. 2341, 101 L. Ed. 2d 184 (1988). The Fifth Amendment applies to nonverbal conduct if the conduct "contains a testimonial component" by "reflect[ing] the actor's communication of his thoughts to another." *Pennsylvania v. Muniz*, 496 U.S. 582, 595 n.9, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990). In this sense, "'[a] nod or head-shake is as much a "testimonial" or "communicative" act . . . as are spoken words.'" *Id.* (quoting *Schmerber v. California*, 384 U.S. 757, 761 n.5, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966)); *see also State v. Paschall*, 182 Wash. 304, 307, 47 P.2d 15 (1935) ("We can see no difference in pointing at the appellant . . . and in mentioning his name. The gesture may be as eloquent as the spoken word—and as effective.").

We have previously held that demeanor is not inherently testimonial. In *State v. Easter*, 130 Wn.2d 228, 241, 922 P.2d 1285 (1996), a defendant raised a Fifth Amendment challenge to a police officer's testimony that the defendant "did not answer and looked away without speaking" in response to police questioning. We held that this testimony violated Easter's right to silence but also stated that "[n]othing in our conclusion . . . prevents the State from introducing pre-arrest evidence of a non-testimonial nature about the accused, such as physical evidence, demeanor, conduct, or the like." *Id.* at 243. This accords with the holdings of other courts examining demeanor evidence under the Fifth Amendment. *See, e.g., Christenson v. State*, 261 Ga. 80, 402 S.E.2d 41, 50 (1991) ("Comments based on courtroom observation of a defendant's demeanor do not infringe on the defendant's Fifth Amendment rights."); *Borodine v. Douzanis*, 592 F.2d 1202, 1209 (1st Cir. 1979) (comments that draw attention to a defendant's demeanor do not, without more, implicate the Fifth Amendment); *Bates v. Lee*, 308 F.3d 411, 421 (4th Cir. 2002) ("[P]rosecutorial comments about the lack of remorse demonstrated by a defendant's demeanor during trial do not violate a defendant's Fifth Amendment right not to testify."). On the other hand, demeanor can be testimonial when the demeanor contains a communicative element, as in the case of nods and headshakes. *Muniz*, 496 U.S. at 595 n.9; *Clark*, 69 M.J. at 444-45.

The rule that emerges from these cases is that while demeanor evidence is not inherently testimonial, certain nonverbal conduct that forms part of a defendant's demeanor might be testimonial. "[N]onverbal conduct contains a testimonial component whenever the conduct reflects the actor's communication of his thoughts

to another." *Muniz*, 496 U.S. at 595 n.9. If an accused is compelled "to communicate an express or implied assertion of fact or belief, the suspect confronts the 'trilemma' of truth, falsity, or silence, and hence the response . . . contains a testimonial component." *Id.* at 597 (footnote omitted).

Applying that definition to the facts of this case, we hold that the jury's question referencing the defendant's "actions-demeanor" does not implicate testimonial conduct. Ordinarily, a person's posture, a person's body language, and other aspects of his outward manner do not require that person to confront the *Muniz* trilemma of truth, falsity, or silence. And while facial expressions and body language might reveal someone's "state of mind" in the most general sense, they do not communicate specific "factual assertions" or "thoughts." *See, e.g., id.*; *Doe*, 487 U.S. at 213.

For these reasons, the generic "actions-demeanor" mentioned in the jury's question are not testimonial. Likewise, for the reasons stated in the preceding section, the bare reference to "actions-demeanor" did not constitute improper commentary on the defendant's silence. Consequently, the reference to demeanor does not implicate the Fifth Amendment.

Justice Johnson's dissent accuses us of "stray[ing] from controlling precedent," relying most heavily on *United States v. Schuler*, 813 F.2d 978 (9th Cir. 1987). Dissent at 2, 4-6. While we consider federal appellate cases for their persuasive effect, only decisions of the United States Supreme Court are controlling on this court. In any event, *Schuler*, like the other cases on which the dissent relies, is quite different from the case before us. Most significantly, *Schuler*'s conclusion that the prosecutor's comment violated the Fifth Amendment was rooted in that amendment's due process

13

clause, not its privilege against self-incrimination. The Fifth Amendment's due process clause has no application to the states. *E.g.*, *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).[10] Thus, *Schuler's* holding has no bearing on Barry's Fifth Amendment argument.

Moreover, the prosecutor in *Schuler* commented in closing argument on the defendant's demeanor and specifically invited the jury to draw a negative inference from that demeanor. *Schuler*, 813 F.2d at 979. No one in this case commented on the defendant's demeanor during the trial. Even when the jury submitted its question, no one in the courtroom offered any suggestion as to what the jury might have observed about the defendant's demeanor, either positively or negatively.[11] *Schuler* thus offers us no guidance on how to assess the jury question at issue in this case.

For these reasons, we reject Barry's Fifth Amendment argument.

## II. Sixth Amendment

We reject Barry's Sixth Amendment argument as well. Barry asserts that the trial court's response to the jury question violated his Sixth Amendment right to a verdict that rests "solely on the basis of the evidence introduced at trial." Barry never specifies, however, the clause of the Sixth Amendment that includes the right he

---

[10] The Fourteenth Amendment's almost identically worded due process clause does apply to the states. *E.g.*, *Betts v. Brady*, 316 U.S. 455, 462, 62 S. Ct. 1252, 86 L. Ed. 1595 (1942), *overruled on other grounds by Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). We decline to decide this case on due process grounds, however, because Barry did not raise due process in his Court of Appeals brief and provided no due process analysis in his filings with this court. *See* note 12, *infra*.

[11] The dissent speculates that the jury's question was somehow connected to the superior court's pretrial admonition to the defendant and members of his family that they refrain from displays of emotion during the trial. Dissent (Johnson, J.) at 5-6. The connection between this admonition and the jury's question is pure conjecture.

14

asserts, and no portion of the Sixth Amendment's text suggests such a right. We generally consider a constitutional argument inadequate if the argument's proponent cites only to general constitutional ideas without specific citations and support. RAP 10.3(a)(6); *see also In re Recall of Washam*, 171 Wn.2d 503, 515 n.5, 257 P.3d 513 (2011) ("[T]he charges were not concise. As [Washam] devotes no substantial argument to the claim, we do not reach it."). Moreover, adopting the rule Barry asserts would run counter to our long-standing rule that evidentiary errors are not presumptively reversible or prejudicial. *See, e.g.*, *State v. White*, 72 Wn.2d 524, 531, 433 P.2d 682 (1967).[12]

The Sixth Amendment provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been

---

[12] Significantly, Barry has not asserted that the instruction violated his right to due process under the Fourteenth Amendment to the United States Constitution. Indeed, the terms "due process" and "Fourteenth Amendment" appear nowhere in Barry's Court of Appeals brief. His petition for review makes three passing references to "due process," but even there, he never mentions the Fourteenth Amendment and he never cites authority stating that due process includes a right to a verdict based solely on evidence. Nor does Barry offer any analysis whatsoever of due process jurisprudence. To demonstrate a due process violation outside the specific guarantees enumerated in the federal Bill of Rights, one must show that the claimed error violated principles of fundamental fairness. *Dowling v. United States*, 493 U.S. 342, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990). Such principles are recognized only if they are "'fundamental conceptions of justice which lie at the base of our civil and political institutions, and which 'define the community's sense of fair play and decency.'" *Id.* at 353 ((citations and internal quotation marks omitted) (quoting *United States v. Lovasco*, 431 U.S. 783, 790, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977)); *see also State v. Irby*, 170 Wn.2d 874, 881, 246 P.3d 796 (2011) (under the Fourteenth Amendment, the defendant's presence during proceedings is a condition of due process only "'to the extent that a fair and just hearing would be thwarted by his absence'" (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107-08, 54 S. Ct. 330, 78 L. Ed. 674 (1934), *overruled in part on other grounds sub nom. Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964))). Here, the parties' briefing supplies us with no analysis of any of these due process principles with respect to a jury's inside-the-courtroom observations. In the absence of briefing and argument by the parties, we decline to wade into these constitutional waters and decide this case on due process grounds.

previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence.

The right to a verdict based solely on evidence presented at trial cannot readily be inferred from the right to a speedy trial, a public trial, an impartial jury, a jury of peers, notice of charges, confrontation of witnesses,[13] compulsory process, or assistance of counsel. Thus, the plain language of the Sixth Amendment does not suggest the existence of a constitutional right to an evidence-based verdict.

Nor does the case law cited by Barry clarify his constitutional source. Barry cites *Taylor v. Kentucky*, 436 U.S. 478, 485, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978), as holding that defendants have a right to a verdict based "solely on the basis of the evidence introduced at trial." But *Taylor* never once mentions the Sixth Amendment. Moreover, the context in which the quoted language from *Taylor* appears suggests a far narrower principle: "This Court has declared that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, *and not on grounds of official suspicion, indictment, continued custody*, or other circumstances not adduced as proof at trial." *Id*. (emphasis added).

This context is vital. *Taylor* dealt with a trial court's failure to instruct the jury on the presumption of innocence in a case where the prosecutor noted in his opening statement that the accused had already been arrested and indicted by a grand jury

---

[13] Moreover, the Supreme Court has held that the confrontation clause only applies to testimonial hearsay. *Davis v. Washington*, 547 U.S. 813, 823-24, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). For the reasons stated above, demeanor is not inherently testimonial. Thus, the jury's generic question does not implicate the confrontation clause.

16

and "linked [the accused] to every defendant who turned out to be guilty and was sentenced to imprisonment" in his closing argument. *Id.* at 486-88. The *Taylor* Court's concern was not that a defendant would be judged based on *inadmissible evidence* but rather based on *inherently prejudicial circumstances* that can never be evidence at all, such as "official suspicion, indictment, [or] continued custody." *Id.* at 485. The prosecution brought several such circumstances to the jury's attention in *Taylor*. That, combined with the trial court's "skeletal" instructions, created a danger "that the jury would convict petitioner on the basis of those extraneous considerations rather than the evidence introduced at trial." *Id.* at 487-88.

The Supreme Court cautioned against efforts to read *Taylor* broadly in *Kentucky v. Whorton*, which clarified that *Taylor* "was expressly limited to the facts." 441 U.S. 786, 789, 99 S. Ct. 2088, 60 L. Ed. 2d 640 (1979) (citing *Taylor*, 436 U.S. at 490). No subsequent Supreme Court decision or any decision from this court reads *Taylor* as establishing the broad rule that Barry asserts. As the Fifth Circuit United States Court of Appeals held, "*Taylor* and *Williams* do not transform any reference to matters not in evidence into a Fifth Amendment violation." *United States v. Mendoza*, 522 F.3d 482, 493 (5th Cir. 2008).

Justice Johnson's dissent takes up Barry's argument that the Fifth and Sixth Amendments guarantee that any verdict must be based on evidence presented at trial. Dissent at 6. The dissent relies on cases in which the jury learned unadmitted information outside of the courtroom. *Turner v. Louisiana*, 379 U.S. 466, 467-69, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965) (jurors were sequestered by and in the company of sheriff's deputies; "[t]he deputies ate with them, conversed with them, and did

errands for them"; two of the deputies were critical witnesses during the trial); *Irvin v. Dowd*, 366 U.S. 717, 719-20, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961) (jurors were aware of and influenced by extensive pretrial publicity adverse to the defendant); *Mattox v. United States*, 146 U.S. 140, 142-43, 13 S. Ct. 50, 36 L. Ed. 917 (1892) (bailiff told the jurors that defendant was guilty of several murders and gave jurors a newspaper article discussing the case); *United States v. Noushfar*, 78 F.3d 1442, 1444-45 (9th Cir. 1996) (surveillance tapes that never had been played in court were sent into the jury room when the jurors retired to deliberate); *United States v. Perkins*, 748 F.2d 1519, 1531-32 (11th Cir. 1984) (juror concealed his knowledge about the defendant during voir dire and disputed some of the defense evidence during deliberations).[14] The dissent's reliance on these cases is misplaced. From a factual standpoint, all of the cases addressed information that jurors learned outside of the courtroom, not their observations inside the courtroom.

More importantly, however, none of the three Supreme Court cases—nor any prior or subsequent opinion from the Supreme Court or this court—stands for the sweeping proposition that a Sixth Amendment violation occurs whenever a judge permits the jury to consider inadmissible subject matter.[15] Adopting the rule Barry and

---

[14] The citation to *Fields v. Brown* is particularly inapt because the dissent relies on Judge Gould's concurrence/dissent in *Fields* rather than the majority opinion. Dissent at 6 (citing *Fields v. Brown*, 503 F.3d 755, 783 (9th Cir. 2007) (Gould, J., concurring in part and dissenting in part)). *Fields* is an en banc decision in which the majority expressly distinguished *Turner*, 379 U.S. 466, concluding (as we do) that *Turner* is factually inapposite. *Fields*, 503 F.3d at 780.

[15] To the extent that either of the dissenting opinions suggests that this right can be inferred from the Fourteenth Amendment's due process clause rather than from the Sixth Amendment, we decline to decide this case on due process grounds for the reasons stated in note 12, *supra*.

the dissents urge would hold trial courts to an impossibly high standard, requiring us to apply the strict constitutional harmlessness test to every trial in which a trial court permitted the jury to consider hearsay, improper character evidence, irrelevant materials, or any other form of inadmissible subject matter. Such a rule would effectively nullify our long-standing standard of review for evidentiary errors and hold our trial courts to an impossible-to-satisfy standard of evidentiary perfection. We expressed this concern in *White*, the case in which we announced the first iteration of the nonconstitutional error standard for criminal cases:

> [N]ot all hearsay evidence . . . is grounds for reversal, even though admitted in error, for the concept of harmless error remains with the courts. A judicial system which treats every error as a basis for reversal simply could not function because, although the courts can assure a fair trial, they cannot guarantee a perfect one. Thus, error without prejudice is not reversible. Expressed differently, error which does not substantially affect the merits of the controversy likewise is not grounds for reversal.

72 Wn.2d at 530-31 (citation omitted).

It is, of course, axiomatic that a jury's verdict must be based on evidence presented at trial; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.01 (3d ed. 2008), which the trial court both read aloud and provided to the jury in writing, explicitly says as much.[16] But we will not presume *constitutional* error simply because the jury may have considered subject matter that, while not evidence, was evident and obvious to them in the courtroom. For these reasons, we reject Barry's Sixth Amendment argument.

---

[16] The trial court's jury instruction 1 states, in relevant part, "Your decisions as jurors must be made solely upon the evidence presented during these proceedings. The evidence that you are to consider during your deliberations consists of the testimony that you have heard from witnesses and the exhibits that I have admitted during the trial. . . ."

III.   Application of the Nonconstitutional Harmless Error Standard

Having concluded that the trial court's instruction violated neither the Fifth nor the Sixth Amendment, we apply the nonconstitutional harmless error standard to the conceded error of permitting the jury to consider Barry's demeanor as evidence. The party presenting an issue for review has the burden of providing an adequate record to establish error. *State v. Andy*, 182 Wn.2d 294, 299-301, 340 P.3d 840 (2014) (citing *State v. Koss*, 181 Wn.2d 493, 503, 334 P.3d 1042 (2014); *State v. Slert*, 181 Wn.2d 598, 608, 334 P.3d 1088 (2014); *State v. Njonge*, 181 Wn.2d 546, 556, 334 P.3d 1068, *cert. denied*, 135 S. Ct. 880 (2014)). It is therefore incumbent on Barry to demonstrate that "'within reasonable probabilities . . . the outcome of the trial would have been materially affected'" had the error not occurred. *Smith*, 106 Wn.2d at 780 (quoting *Cunningham*, 93 Wn.2d at 831).

The parties agree that nothing in this record reveals Barry's demeanor at trial. ER 103(a)(1) states that in the case of a ruling that erroneously admits evidence, the party assigning error must not only object in a timely manner but also must "stat[e] the specific ground of objection, if the specific ground was not apparent from the context." Here, while Barry generally objected to the trial court's instruction, his counsel failed to make any record suggesting how the court's instruction could have undermined or weakened Barry's case.[17] Counsel could have attempted to make a record of Barry's demeanor by asking the court to note for the record any unusual or potentially prejudicial behavior. Such a record could have been made either contemporaneously

---

[17] In objecting to the trial court's instruction, Barry's counsel stated only that the case the court was citing "is factually distinct from this one."

at the time Barry displayed a potentially prejudicial demeanor or after the jury's question regarding Barry's demeanor. Without such a record, any argument about prejudice is completely speculative.

The record's silence regarding the defendant's in-court demeanor is doubly fatal to Barry's challenge under the nonconstitutional harmless error standard: it is impossible to know whether the demeanor "materially affected" the verdict at all, and, even if it did, it is impossible to determine whether that effect was favorable or unfavorable to Barry. The nonconstitutional standard does not presume prejudice, nor have we ever suggested that a reviewing court applying the standard may speculate as to potential prejudice. Because error without prejudice is not reversible, *White*, 72 Wn.2d at 531, we affirm.

## CONCLUSION

We hold that the trial court's instruction did not violate the Fifth Amendment or Sixth Amendment. We apply the nonconstitutional harmless error standard and affirm.

_____ Wiggins, J.

WE CONCUR.

_____ Madsen, C.J.

_____

_____ González, J.

_____ Owens, J.

_____ Fairhurst, J.

_____ Yu, J.

No. 89976-2

JOHNSON, J. (dissenting)—A person charged criminally has a constitutional right to a fair trial and to require that the State establish guilt beyond a reasonable doubt through testimony, evidence, and exhibits. It is a long-recognized element of a fair trial that the jury consider only relevant and competent evidence bearing on the issue of guilt or innocence. Today's majority opinion abandons precedent and allows a conviction based on "evidence" that was not presented during trial, to which the defense could not respond and which an appellate court is unable to review.

During deliberations, the jury asked the trial court if it could consider the defendant's "actions-demeanor" during trial. In response, the court instructed the jury to consider as evidence everything it had observed in the courtroom. Because this instruction was given after the trial ended and arguments were concluded, Robert Barry did not have an opportunity to confront, rebut, cross-examine, or explain his demeanor, which the court directed that the jury could consider as

"evidence." The majority characterizes the trial court's response to the jury as

"'instructional error[]'"[1] and holds that the error did not implicate Barry's

constitutional rights to a fair trial. Majority at 4. The majority reasons that the error

was not of constitutional magnitude because it did not violate Barry's Fifth

Amendment privilege against self-incrimination or his Sixth Amendment rights

because the text of the Sixth Amendment does not suggest the existence of a

constitutional right to an evidence-based verdict. Majority at 13-14; U.S. CONST.

amends. V, VI. The majority errs on both parts.

The majority's unprecedented view of the Fifth and Sixth Amendments

strays from controlling federal precedent and basic principles of a fair trial: the

criminally accused has the right not to take the stand, to sit silently and not

incriminate himself, to know the substance of the evidence against him, to be

---

[1] The error here cannot accurately be characterized as merely "instructional" because instructional errors are not based on the evidence admitted, but on the instructions to the jury regarding how to make use of the admitted evidence. *See, e.g., State v. Gresham*, 173 Wn.2d 405, 423-24, 269 P.3d 207 (2012) (finding nonconstitutional instructional error where the trial court failed to give a limiting instruction in connection with character evidence); *State v. Johnson*, 100 Wn.2d 607, 623, 674 P.2d 145 (1983) (finding constitutional instructional error where the jury instructions omitted an element of the crime), *overruled on other grounds by State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985); *State v. McCullum*, 98 Wn.2d 484, 487-88, 656 P.2d 1064 (1983) (finding constitutional instructional error where the trial court failed to instruct on the "beyond a reasonable doubt" standard). The error in this case is simply not comparable. The trial court did not err in instructing the jury *how* to weigh the evidence; it erred in allowing the jury to consider "evidence" that was not admitted at trial, that is not in the record, and that the defendant had no opportunity to rebut. Classifying the error in this case as "instructional" trivializes the consideration of unadmitted, unconfronted, and unrecorded information as evidence.

2

afforded an opportunity to confront that evidence, and to receive a verdict based on the properly admitted evidence. The trial court's instruction that the jury consider unadmitted, unconfronted, and unknowable "demeanor" evidence violates each of those constitutionally guaranteed rights. His conviction should be reversed and this case remanded for a constitutionally fair trial.

*Fifth Amendment*

The majority erroneously concludes that the nontestimonial nature of Barry's perceived demeanor, and the fact that the reference to demeanor did not amount to a comment on the defendant's right to silence, removes this error from the Fifth Amendment's purview. In so concluding, it largely relies on cases involving evidence of the defendant's out of court demeanor.[2]

---

[2] *See* majority at 9-10 (citing *United States v. Velarde-Gomez*, 269 F.3d 1023, 1030-31 (9th Cir. 2001) (involving evidence of the defendant's demeanor at the time of arrest); *State v. Mauro*, 159 Ariz. 186, 766 P.2d 59, 70-71 (1988) (involving an officer's observations of the defendant's demeanor when arrested as opposed to when taken to the station to observe photographs); *United States v. Elkins*, 774 F.2d 530, 537-38 (1st Cir. 1985) (involving witness testimony that defendant was visibly nervous at the scene of the arrest)).

The only two cases cited by the majority that *do* involve the defendant's in-court demeanor are cited within a footnote, and neither case supports the majority's argument. Majority at 10 n.9 (citing *Cunningham v. Perini*, 655 F.2d 98, 100 (6th Cir. 1981) (holding that the prosecutor's comment on the nontestifying defendant's in-court demeanor violated his due process rights, but the court did not reverse because the petitioner challenged the unpreserved error via habeas corpus petition and the petitioner could not establish manifest error); *Christenson v. State*, 261 Ga. 80, 402 S.E.2d 41, 49 (1991) (holding that a comment on demeanor during the *sentencing phase* is permissible because sound policy reason exists to consider remorse evidence during sentencing)). Neither decision supports the majority's position here that the court's direction to consider Barry's demeanor as evidence of guilt does not infringe on Barry's Fifth Amendment rights.

However, the majority's narrow view of the Fifth Amendment contradicts Ninth Circuit precedent. *United States v. Schuler*, 813 F.2d 978 (9th Cir. 1987). In *Schuler*, the prosecutor told the jury it should consider the defendant's behavior during trial, including his laughter, as evidence of guilt. The Ninth Circuit held the prosecutor violated the defendant's rights under the Fifth Amendment:

> In effect the defendant would be compelled to testify to explain any actual or possible behavior that the prosecutor might bring to the jury's attention. While this pressure to testify may well be the exception, there is no reason for use of such comments that would justify even a slight opening of the door to an invasion of constitutional rights.

*Schuler*, 813 F.2d at 982.

The court acknowledged that the comment did not refer to Schuler's right not to testify, nor did the laughter constitute testimony, but the court was concerned that such a comment by the prosecutor would "eviscerate the right to remain silent by forcing the defendant to take the stand" to explain the perceived in-court demeanor. *Schuler*, 813 F.2d at 982.

Other courts have also recognized the constitutional implications of such a direction to consider demeanor:

> It is clear that the prosecutor's reference to the courtroom behavior of the defendant was improper. It impugned defendant's Fifth and Sixth Amendment rights. Defendant had a Fifth Amendment right not to testify, and he elected to exercise that right. He also had a Fifth Amendment right not to be convicted except on the basis of evidence adduced against him. Defendant had . . . a Sixth Amendment

4

right to a trial by jury . . . . In tandem, defendant had the right to a jury trial at which, if he elected not to testify, the fact of his presence and his *non-testimonial behavior in the courtroom could not be taken as evidence of his guilt.*

*United States v. Carroll*, 678 F.2d 1208, 1209 (4th Cir. 1982) (emphasis added).

Today's majority errs by concluding that Fifth Amendment protections extend only to defendant testimony and to actual comments on the defendant's right to remain silent. As recognized by federal courts, invitations to the jury to consider nontestimonial in-court conduct still impugns the defendant's Fifth Amendment right because it in essence compels the defendant to take the stand to explain his or her behavior.

Here, we have no record of Barry's demeanor during trial, but we do know that before trial began, the court advised Barry that he should refrain from any display of emotion. It advised that everyone in the courtroom remain stone-faced throughout the trial and that no one should show any reaction to the children's testimony. The court explained to Barry that such a showing of emotion could "backfire[]" on his case. 4 Verbatim Report of Proceedings at 451. Assuming Barry complied with that instruction, his observable lack of remorse throughout trial likely prompted the question from the jury. By then instructing that the jury could consider Barry's demeanor throughout trial as evidence of his guilt, the court put him in the constitutionally intolerable position of either waiving his

5

constitutional right to refuse to testify, so that he could explain his remorseless attitude throughout trial or leave the jurors to formulate their own inferences about his behavior. The defendant has a recognized Fifth Amendment right not to be put in such an untenable position; there simply "is no reason for use of such comments that would justify even a slight opening of the door to an invasion of constitutional rights." *Schuler*, 813 F.2d at 982.

### *Sixth Amendment*

The majority's textualist interpretation of the Sixth Amendment also contradicts explicit precedent: "The Sixth Amendment's guarantees of a trial by an impartial jury and the right of confrontation require that the jury base its verdict on the evidence presented at trial." *Fields v. Brown*, 503 F.3d 755, 783 (9th Cir. 2007) (Gould, J., concurring/dissenting) (citing *Turner v. Louisiana*, 379 U.S. 466, 472-73, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965)).

> In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the "evidence developed" against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.

*Turner*, 379 U.S. at 472-73. This requirement "goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury." *Turner*, 379 U.S. 472. This constitutional right to an evidence-based verdict is a basic, long-standing

6

principle.[3] It is troubling that the majority does not discuss or even reference controlling precedent and instead advances its own creative view of the Sixth Amendment.

The fact that, practically speaking, jurors may often rely on "extraevidentiary" factors that are not compatible with the fundamental focus of the right to a fair trial and due process[4] is unfortunate but not constitutionally intolerable. I agree with the majority that the Fifth and Sixth Amendments do not (and cannot) guarantee that each conviction is based solely on the evidence presented because from the moment the jurors enter the courtroom, they may subconsciously form impressions about every aspect of the trial. This is an unavoidable human element of the trial process. But after the defense has rested its case, and after closing arguments, the trial court cannot instruct that those observations may be treated as "evidence" bearing on the determination of guilt or

---

[3] *See Irvin v. Dowd*, 366 U.S. 717, 723, 81 S. Ct. 1639, 1642, 6 L. Ed. 2d 751 (1961) (defendant's right to an impartial jury requires a verdict based solely on the evidence presented at trial); *Mattox v. United States*, 146 U.S. 140, 149, 13 S. Ct. 50, 36 L. Ed. 917 (1892) (it is vital "that the jury should pass upon the case free from external causes tending to disturb the exercise of deliberate and unbiassed judgment"); *United States v. Noushfar*, 78 F.3d 1442, 1445 (9th Cir. 1996) (structural error for the jury to consider unadmitted evidence because it "undermines one of the most fundamental tenets of our justice system: that a defendant's conviction may be based only on the evidence presented during the trial"); *United States v. Perkins*, 748 F.2d 1519, 1533 (11th Cir. 1984) ("Extrinsic evidence, evidence that has not been subject to the procedural safeguards of a fair trial, threatens such constitutional safeguards as the defendant's right of confrontation, of cross-examination, and of counsel." (citing *Turner*, 379 U.S. at 743)).

[4] *See* Andrew C. Helman, *Racism, Juries, and Justice: Addressing Post-Verdict Juror Testimony of Racial Prejudice During Deliberations*, 62 ME. L. REV. 327, 330-31 (2010).

innocence when the defendant has had no opportunity to challenge or explain that "evidence." Such an instruction is akin to allowing a prosecutor to argue evidence not presented at trial or to allowing a new witness to testify privately, without cross-examination, to the jury during its deliberations. It deprives the defendant his right to confront the evidence, and at the very least, it deprives Barry an opportunity to challenge the propriety of the use of this "evidence" in the determination of guilt.

One would hope that an instruction that the jury could consider a defendant's race, gender, religious beliefs, or physical appearance in its deliberations would be constitutionally reprehensible—that we would not tolerate such an instruction to consider irrelevant attributes as "evidence" of guilt. Similarly, the trial court's vague instruction here to consider the defendant's "demeanor" invites that same prejudicial abuse and opens the door for the jury to consider the appearance and demeanor of the defendant instead of focusing on the evidence presented. Such an invitation violates basic notions of due process.

The trial court should have responded to the juror's question, if at all, by telling the jury to review the instructions already properly given, instructions which stated, "It is your duty to decide the facts in this case based upon the evidence presented to you during this trial. . . . Your decisions as jurors must be made solely upon the evidence presented during these proceedings." Clerk's

Papers at 119. Our criminal procedures are designed specifically to channel the jury's considerations into narrow, structured, evidentiary categories. From jury voir dire, designed to eliminate juror bias and prejudice, to the rules of evidence, designed to weigh considerations of relevance, to the jury instructions themselves, designed to require a reasoned analysis of admitted evidence in coming to a verdict, criminal trial procedure aims at ensuring that defendants are convicted on *evidence*. The court's instruction to consider unconfronted "demeanor" evidence deprived Barry of that constitutionally guaranteed right.

The majority's holding today is incongruous with precedent, with the guaranties of the Fifth and Sixth Amendments, and with basic notions of fairness and due process. It is well established that a court's instruction to consider unadmitted, unrecorded, and unconfronted evidence impugns the defendant's constitutional right not to testify and violates his right to confront the evidence against him. Because the error is constitutional in nature and Barry objected to the instruction at trial, the State bears the burden of establishing that the error was harmless beyond a reasonable doubt. *State v. Jones*, 168 Wn.2d 713, 724, 230 P.3d 576 (2010). The State cannot meet this burden based on this silent record. Barry's

9

conviction should be reversed and the case remanded for a new trial.

No. 89976-2


GORDON McCLOUD, J. (concurring in dissent)—I agree with the dissent's comprehensive explanation of why the court's instruction violated Robert Barry's right to a verdict based solely on the evidence under the Sixth Amendment to the United States Constitution. I also believe that the comment violated Barry's due process rights to both a fair trial and a trial based solely on the evidence under the Fourteenth Amendment to the United States Constitution. I therefore concur in the dissent.

Gordon McCloud, J.