# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53374-0-II |
| Respondent, | |
| v. | |
| JERRELL ALLEN POSEY, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Jerrell Allen Posey appeals his two assault convictions and his conviction of unlawful possession of a firearm. Posey argues that the trial court erred when it admitted exhibits 28 and 29, which were records from Facebook, without a witness to testify because the State did not satisfy the requirements in RCW 10.96.030(2)(d), which allows for the admission of business records without testimony from the custodian; that admitting the records without a witness violated his Sixth Amendment right to confrontation; and that his convictions should be reversed because the error was not harmless under either the constitutional or nonconstitutional harmless error standard.

We hold that even if the trial court erred or the Confrontation Clause was violated, any error was harmless under either the nonconstitutional or constitutional harmless error standard. Accordingly, we affirm.

FACTS

A. THE SHOOTING

On the afternoon of October 12, 2017, Courtney Walters and Marcel Walker drove together to a corner store on 15th street. Walker went into the store and Walters waited in the car with the window halfway down.

Walters noticed that there were three people outside the store. Walters recognized two of the three people. One person she recognized was Posey. Walters knew Posey because they had previously gone to the same high school and Walters had seen Posey around. Walters also testified that Posey would hang out with her cousin and associate with some of her family members. Walters was Facebook friends with Posey, but did not consider him a friend. Walters also recognized Leeshawn Redic. Walters knew Redic from the juvenile drug classes they had both attended. Walters did not know the third individual, but she had seen him in pictures with mutual friends. Although Walters recognized Posey and Redic, she did not engage them while waiting for Walker.

When Walker left the store, Redic asked Walker where he was from and "if he's a gang bang." 4 Verbatim Report of Proceedings (VRP) at 237-38. Walker replied that he did not bang.[1] Posey started to make gang signs. Walters told them, "[y]ou guys need to go to school" and "you guys just need to stop." *Id.* at 243. Redic then lifted up his shirt to reveal that he had a gun. The whole interaction was about "three to four minutes." *Id.*

Posey, Redic, and their friend left and walked across the street. As they were leaving, Walters and Walker started to drive away. Walters then saw Redic give the gun to Posey. Walters

---

[1] Walker was wearing a blue shirt and jacket. Blue is the color of the Hilltop Crip gang, which Posey appeared to have a connection with.

saw Posey point the gun at her car and heard shots being fired. A bullet hit the driver's door, and the back window on the driver's side broke. Walters would later testify to all these details at trial.

Walters drove to a nearby Safeway, called 911, and waited for the police. Walters was noticeably upset during the 911 call. When the operator asked Walters if she could identify who had the gun, Walters was unable to identify Posey as the shooter and struggled to remember Redic's name. At trial, the 911 call was played for the jury.

Walters testified she was very emotional when the police arrived and that it took her awhile to calm down. Officer White of the Tacoma Police Department responded to the call. White testified that Walters was "pretty much in a panic" and that it took time to get Walters to focus. *Id.* at 302. At the time, Walters could not remember Posey's or Redic's name. To help identify the shooter, Walter used Facebook to show White pictures of Posey. One picture, that she showed White to identify Posey, was uploaded by an account Thatkidd Uzi, which Walters testified was Posey's account. Walters testified that she showed Posey's picture to White in order to identify the shooter.

B. PRE-TRIAL PROCEEDINGS

The State charged Posey with two counts of assault in the first degree and one count of unlawful possession of a firearm in the second degree.

Prior to the trial, Posey challenged the State's proposed method of authentication for certain Facebook records that the State sought to admit as business records.[2] The State offered a certification from a Facebook records custodian in accordance with RCW 10.96.030, in lieu of having a Facebook custodian testify at trial. The certification that the State presented was a "Certificate of Authenticity of Domestic Records of Regularly Conducted Activity." The witness for the document certified:

> 1. I am employed by Facebook, Inc. ("Facebook"), headquartered in Menlo Park, California. I am a duly authorized custodian of records for Facebook and am qualified to certify Facebook's domestic records of regularly conducted activity.
>
> 2. I have reviewed the records produced by Facebook in this matter in response to the Search Warrant received on January 27, 2018. The records include search results for basic subscriber information, IP logs, messages, photos, videos, other content and records UziLondon666, dope.bo92, weezyredic, leeshawn.redic.37, robert.doss.7169 and 100002246579224. [sic]
>
> 3. The records provided are an exact copy of the records that were made and kept by the automated systems of Facebook in the course of regularly conducted activity as a regular practice of Facebook. The records were saved in electronic format after searching Facebook's automated systems in accordance with the above-specified legal process. The records were made at or near the time the information was transmitted by the Facebook user.

Exhibit 1.

Posey argued that the State was required to produce a witness from Facebook because the records are "dynamic, they're changing, and they're subject to data manipulation." 1 VRP at 17. The trial court noted that authentication is a "relatively low standard of proof, especially with

---

[2] The State presented three types of evidence obtained from Facebook. First, there were the photos that Walters gave to the police. Second, there were the Facebook records that the State obtained from Facebook as a result of a search warrant. These records would become exhibits 28 and 29. Finally, there were screenshots that the State took of Posey's public Facebook profile. Prior to the trial, Posey only challenged the authentication of Facebook records that were obtained via a search warrant, exhibits 28 and 29. Additionally, on appeal, Posey only challenges exhibits 28 and 29.

regard to . . . social media." *Id.* at 21. The court also noted that the statute was enacted to eliminate the need for records custodians to come in to testify. The State explained that the detective could testify to the detective's use of Facebook in his investigation and how he determined certain accounts were Posey's and Redic's. The court determined that it was not necessary for a custodian to come to trial to testify.

C. TRIAL

At trial Walters, Walker, Detective James Buchanan, and White testified for the State. Walters testified consistently with the facts set forth above. Walters also identified Posey in the courtroom as the person she recognized outside of the convenience store. Walters testified that the person's last name was Posey, and said there was no doubt in her mind that Posey was the one who shot her car.

Buchanan, the lead detective on the case, met with Walters two months after the shooting. During the meeting, the detective showed Walters pictures of Posey, Redic, and the third individual. Walters correctly identified the three individuals from these photos.

Buchanan testified that Posey's Facebook page was public, and that Posey went by the name of Thatkidd Uzi on his page. Buchanan explained that when a Facebook page is public, anyone can look at the page and see the account holder's name, pictures, videos, posts, and anything else they decide to disclose to the public. By looking at Posey's Facebook page, Buchanan had independently found the same picture Walters had shown to police to identify Posey. Buchanan also produced screenshots of Posey's Facebook profile, which was visible to the public.

Buchanan also served Facebook with a search warrant for Posey's and Redic's Facebook accounts. The Facebook records included messages sent right before and after the shooting. In the messages from Posey right before the shooting, Posey says he is on the way to 14th. Exhibit 28 shows that Posey was sending messages shortly after the shooting. At first, Posey notes that no one would give him a ride. Later Posey states that someone "said I'm hot." Exhibit 28 at 7. Exhibit 29 also showed messages by Posey indicating that he was looking to get rid of a gun a couple weeks after the shooting.

White, who responded to Walters' 911 call, also testified that he was in the area when the shooting happened and heard gun fire. White saw bullet holes in the driver's door of Walters' car, and saw that a window was broken out. White testified that Walters told him there were three people involved, and that she knew one of them. White also testified that Walters had shown him a picture of the shooter.

Walker also testified about the incident. Although Walker was less clear about what happened and he could not identify Redic or Posey, his testimony was generally consistent with Walters' testimony. Specifically, Walker testified that he and Walters went to the store and some people approached him as he left the store. Walker also testified that Walters spoke with the people who approached him, and as Walters was driving away someone shot at the car. Following the shooting Walker and Walters stopped at a Safeway parking lot to wait for the police.

In closing, Posey argued that Walters' identification of Posey as the shooter was not credible and questioned how well Walters really knew Posey. Posey also argued that the police investigation was inadequate and that the jury should conclude that the crime met only the elements

of assault in the second degree rather than assault in the first degree because "this wasn't a directed shot with intent to commit great bodily harm." 5 VRP at 503.

The jury returned verdicts of guilty on each count.

Posey appeals.

## DISCUSSION

Posey argues that the trial court erred when it admitted exhibits 28 and 29, which were records from Facebook, without a witness to testify because the State did not satisfy the requirements in RCW 10.96.030(2)(d), which allows for the admission of business records without testimony from the custodian and that admitting the records without a witness violated his Sixth Amendment right to confrontation. Posey further contends that his convictions should be reversed because the error was not harmless under either the constitutional or nonconstitutional harmless error standard.

We disagree and hold that if there was error, the error was harmless.

A. EVIDENTIARY ERROR

We first address Posey's claim that the trial court committed evidentiary error in admitting the Facebook records contained in exhibits 28 and 29 that were obtained by the search warrant. Even assuming the trial court erred in admitting exhibits 28 and 29, the error was harmless. We consider a trial court's evidentiary ruling on evidence under the nonconstitutional harmless error standard. *State v. Barry*, 183 Wn.2d 297, 317, 352 P.3d 161 (2015). Under this standard, the party presenting the issue for review must show a reasonable probability that the error materially affected the outcome of the trial. *Id.* at 317-18.

Posey argues that exhibits 28 and 29 were central to the State's case because they bolstered Walters' "imperfect" identification of Posey. Br. of Appellant at 19. However, the State presented substantial evidence of Posey's guilt apart from the information contained in exhibits 28 and 29. As we note above, Walters testified that she recognized Posey while she was waiting outside the store, and that she knew Posey. Walters testified that the interaction with Posey lasted about "three to four minutes," long enough for her to make a later identification of him. 4 VRP at 243. Walters also testified that she saw Redic give Posey the gun, and Posey aim the gun at her moments before her car was hit.

While speaking with law enforcement after the shooting, Walters was able to locate pictures of Posey from Facebook and identified him as the person who shot at her. Two months after the shooting, Walters was able to identify Posey in a picture that the police provided to her. Finally, Walters identified Posey at trial and testified there was no doubt in her mind that Posey was the person who shot her car.

Exhibits 28 and 29 did little to support Walters' testimony and were not central to the State's case, particularly where Walters' account of the event was largely corroborated by White and Walker. Posey fails to show that the admittance of the challenged Facebook records materially affected the outcome of the trial in light of the substantial unchallenged evidence showing that Posey was the shooter. *Barry*, 183 Wn.2d at 317-18.

We conclude that any error in admitting exhibit 28 and 29 was harmless.

B. CONSTITUTIONAL ERROR

Posey also argues that the trial court violated Posey's Sixth Amendment right to confrontation by admitting exhibits 28 and 29 without testimony from the custodian of the records. Even if the admission of the exhibits violated the Confrontation Clause, the error was harmless.

"[I]f trial error is of constitutional magnitude, prejudice is presumed and the State bears the burden of proving it was harmless beyond a reasonable doubt." *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013). The error is harmless only if beyond a reasonable doubt the untainted evidence is so overwhelming that it "necessarily leads to the same outcome." *State v. Mayer*, 184 Wn.2d 548, 555, 362 P.3d 745 (2015). The reviewing court only considers the untainted evidence when making this determination. *State v. Watt*, 160 Wn.2d 626, 636, 160 P.3d 640 (2007); *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985).

Here, for the same reasons articulated above, the error was harmless beyond a reasonable doubt. The untainted evidence proving Posey's guilt was overwhelming. Posey was known to Walters prior to the shooting, lessening the likelihood that her identification was mistaken. Additionally, Walters and Posey interacted with one another immediately before the shooting. And Walters then identified Posey at trial as the person who shot at her car. This evidence necessarily leads to a finding of guilt even in the absence of the Facebook records in exhibits 28 and 29.

We conclude that any error in admitting the challenged Facebook records was harmless beyond a reasonable doubt.

## CONCLUSION

We conclude that even if there was an error, it was harmless. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, P.J.

GLASGOW, J.